[Civ. No. 10215.   First Appellate District, Division One.—March 15, 1937.]

MARTIN DURANTE et al., Respondents, v. CITY OF OAK-LAND (a Municipal Corporation), Appellant.

F. Bert Fernhoff, City Attorney, and Weinmann, Quayle & Berry for Appellant.

Glickman & Glickman for Respondents.

THE COURT.—The defendant appeals from a judgment awarded plaintiffs for damage to personal property. Defendant concedes that the complaint stated a cause of action under the Public Liability Act of 1923. (Stats. 1923, p. 675.) It alleged that defendant used broken and defective sewer pipes in a public sewer system under the surface of Washington Street in Oakland, and knowingly maintained the same in a dangerous and defective condition, with the result that plaintiffs' basement at 811 Washington Street was flooded and their merchandise damaged. It was further alleged that a claim for the damage was duly presented, and this defendant so admitted. With this exception it denied generally the allegations of the complaint, and pleaded as a further defense the contributory negligence of the plaintiffs.

The trial court found that the defendant maintained a sewer system beneath the surface of the street in front of

plaintiffs' premises, that Edward Donahoo was the city superintendent of sewers; that plaintiffs used the basement of their premises for storage purposes in conducting a retail grocery business and that they were not guilty of negligence contributing to the damage alleged. It further found as follows:

"7. It is true that on the 18th day of November, 1934, and for a long time prior thereto and continuously during said period of time defendant permitted an old abandoned public sewer system, consisting of a main line and various laterals leading therefrom, to remain below the surface of Washington street and in front of the plaintiffs' place of business in the city of Oakland . . .

"8. It is true that on the 18th day of November, 1934, and for a long time prior thereto and continuously during said period of time there existed a dangerous and defective condition in said old abandoned public sewer system below the surface of Washington street from 8th street to 14th street and in front of the place of business of plaintiffs in the city of Oakland. . . . It is true that in 1929 the last mentioned public sewer system was abandoned by defendant, and at the time of the abandonment of said public sewer system by the defendant the laterals connected with said old abandoned main sewer were disconnected by the defendant from the private sewers of the private property owners along said Washington street, including the property occupied by plaintiffs, and at the time of said abandonment and continuously from said time to and including the 18th day of November, 1934, said laterals were not properly sealed by defendant so as to prevent the passage or seepage of water through same, which condition existed on the 18th day of November, 1934. It is true that at said time said abandoned main sewer pipe had a drop or fall of approximately 9 feet from Washington street to 8th street along said Washington street, and that at 8th street, just below or south of the place of business of plaintiffs' said old abandoned main sewer pipe was closed up so that water could not pass through same; that said old abandoned public sewer system in front of plaintiffs' place of business as aforesaid . . . was so negligently, carelessly and recklessly left in said dangerous and defective condition by defendant on the 18th day of November, 1934, that by reason thereof water accumulated therein and, being unable to flow out of said main abandoned sewer at the lower end thereof at 8th street

by reason of said main line being closed up as aforesaid at that point, was ejected therefrom out of one of said laterals which was not properly sealed, as aforesaid, by defendant in front of the place of business of plaintiffs, below the surface of the street. That as a result thereof the basement of the plaintiffs at said address was flooded with water from said sewer pipes, which damaged the groceries and merchandise of plaintiffs. . . .

"10. It is true that at all times and dates hereinabove mentioned said defendant and the said superintendent of sewers of said corporate defendant, and each of them, knew of said described and mentioned dangerous and defective condition of said abandoned public sewer system on Washington street and in front of the place of business of plaintiffs. That defendant and said superintendent of sewers and each of them negligently and carelessly failed, omitted and neglected to remedy said defective condition as aforesaid of said abandoned public sewer system or to take such action as should have been necessary to protect the plaintiffs and public against said defective condition within a reasonable time after having knowledge thereof."

The defendant contends that the evidence fails to establish its liability under the act; that the evidence shows that the plaintiffs were guilty of contributory negligence as a matter of law, and that the court erred to defendant's prejudice in permitting its superintendent of sewers to be examined by plaintiffs under section 2055 of the Code of Civil Procedure.

It appears that until 1929 the main sewer on Washington Street was a concrete pipe 12 inches in diameter situated 12 feet below the surface. Extending from the main sewer to the premises on each side of the street were laterals or side sewers made of concrete, which were 6 inches in diameter. At the ends of the blocks were catch-basins for surface water, which was conveyed to the main sewer by concrete pipes 10 inches in diameter. In 1929 the defendant installed a new sewer system whereby each side of this street was separately served. Since then the main sewer on the west side of the street—on which side plaintiffs' premises are situated—has been located 2 feet from the curb and 14 inches below the surface. The pipes leading from the catch-basins were connected with the new main sewer, and new laterals were installed from the main sewer to the premises abutting on the street. With the installation of the new system the old was discontinued

and abandoned. It was testified by defendant's sewer inspector that when the old system was abandoned the old laterals were not closed with concrete but with burlap and sand tamped in, and that this method would not permanently seal the ends of the laterals, the use of concrete being necessary to have this effect. The inspector could not testify that the lateral in front of plaintiffs' premises had been closed in any way; but, according to other witnesses who examined the lateral after plaintiffs' basement was flooded, the end of this lateral was found to be partially filled with gravel and water was flowing therefrom.

This evidence was sufficient to sustain the conclusion of the court that the failure to properly seal the lateral would permit water in the abandoned main sewer, if sufficient accumulated, to flow through the lateral.

With respect to the condition of the abandoned sewer with which the lateral mentioned was connected the only witness who testified was the defendant's superintendent of sewers, who stated that it was broken at intervals; that at the ends of the other blocks along Washington Street it was supposed to have been cemented, but whether this was true he would not state positively. However, it appears to be the view of all parties that the old main sewer was sealed or closed at Eighth Street a short distance south of the plaintiffs' store; but whether this was done at the intersections of Ninth, Tenth, Eleventh, Twelfth and Thirteenth Streets, to the north was left in doubt by the testimony. There was a fall of about 9 feet from Fourteenth to Eighth Street, and about 2.31 feet from Ninth Street to Eighth Street. The partially opened end of the lateral in question was about 7 feet from the curb fronting plaintiffs' premises and below their basement.

Although the testimony was conflicting, sufficient appears to support the conclusion that this lateral inclined from the end nearest plaintiffs' premises toward the old main sewer, and that the incline varied in places from one-quarter of an inch to 12 inches.

During the week commencing November 12th there were heavy falls of rain in the course of which plaintiffs' basement was flooded. Defendant concedes that the flood water came from the street, but denies there was any evidence reasonably supporting the conclusion that it came from the abandoned sewer system. One of defendant's employees

testified that shortly after the occurrence, following the directions of superintendent Donahoo, he caused an excavation to be made in front of plaintiffs' premises. This was 14 feet in depth, 6 feet in length along the curb and 2 feet in width. He found that near the end of the old lateral, which was 6 feet below the surface, the earth had caved in, leaving a hole 4 feet deep and 3 feet in width, which extended to the wall of the basement, and that some water was then flowing from the end of the lateral. A contractor who, at the request of the owners of the building, examined the basement after the occurrence and who was called at a witness for the defendant, testified that he observed at the southeast corner of the basement an area 2 feet wide and about 2½ feet long in the floor which had been broken, and that fragments of concrete therefrom had been dumped in the broken space. This witness also testified that he found no breaks in the pipes in the basement, and that the broken portion of the floor appeared to have been in that condition for some months. Both plaintiffs testified that they had not previous to the time that the basement was flooded observed any broken space in the floor and that no excavations therein were made by them. As far as appears, no investigation to determine the condition of the old main sewer, or to what extent water had accumulated therein, was made, although the facts in this respect were peculiarly within the knowledge of defendant's officers who had control of the streets, or might readily have been ascertained by them. Enough was shown, however, to support the inference that the water which entered the basement came from the old lateral as the result of the accumulation of water in the old main sewer. ■ Demonstration in this respect was not required (Code Civ. Proc., sec. 1826; *Kennedy* v. *Minarets etc. Ry. Co.*, 90 Cal. App. 563 [266 Pac. 353]); and it was sufficient that it be shown by circumstances from which the ultimate conclusion sought to be proved might reasonably be inferred. (*Perry* v. *D. J. & T. Sullivan, Inc.*, 219 Cal. 384, 391 [26 Pac. (2d) 485]; *Paiva* v. *California Door Co.*, 75 Cal. App. 323, 325, 330 [242 Pac. 887]; *Jno. L. Witney, Inc.*, v. *Sierra Ry. Co.*, 123 Cal. App. 430 [11 Pac. (2d) 415].) Such a finding will not be reviewed although different inferences might have been drawn, or the appellate court might believe another inference more proper. (*Smith* v. *Occidental S. S. Co.*, 99 Cal. 462 [34 Pac. 84]; *Slaughter*

v. *Winkle,* 213 Cal. 573 [2 Pac. (2d) 789] ; *Gerdes* v. *Pacific Gas & Elec. Co.,* 219 Cal. 459 [27 Pac. (2d) 365, 90 A. L. R. 1071] ; *Skaggs* v. *Wiley,* 108 Cal. App. 429 [292 Pac. 132].)

The law is well settled that as a general rule municipalities have no power to create nuisances; and where private property is flooded by reason of the negligent construction of sewers or their negligent discontinuance, damages may be recovered. (*Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50] ; *City of Atchison* v. *Challiss,* 9 Kan. 603 ; *Shroeder* v. *Baraboo,* 93 Wis. 95 [67 N. W. 27].) The defects complained of came fairly within the provisions of the Public Liability Act, and were such that, in the event of heavy rains, injury to adjoining property would follow as a natural and probable consequence, which should have been foreseen by the officers of the municipality.

On the issue of contributory negligence, there is no evidence which would reasonably support the conclusion that the plaintiffs—who were lessees—knew of the dangerous condition of the street, or that the floor of their basement was defective. They denied that they knew of these facts, and we cannot say that the trial court was not warranted in believing their testimony. Nor does the record disclose evidence which would necessitate a finding of a lack of due care on their part, either before or after their basement was flooded.

Defendant relies on *Norton* v. *Ransome-Crummey Co.,* 173 Cal. 343 [159 Pac. 1177]. There the defendant used due care in the work which it was authorized to perform. While the soil in front of plaintiff's premises was necessarily exposed thereby a slight rainfall caused water to percolate through the basement wall, which was inadequately constructed. It was held that no negligence on the part of the defendant was shown, there being no evidence of the maintenance of a large body of water exerting pressure against the wall. But, as the rule is declared in the following cases, where municipalities or others construct sewers or drains in such a manner that the surface water of a large territory is gathered into a body and precipitated upon private premises, to the injury of the owner, such persons, other things being equal, are liable: *Stanford* v. *San Francisco,* 111 Cal. 198 [43 Pac. 605] ; *Shaw* v. *Sebastopol,* 159 Cal. 623 [115 Pac. 213] ; *Durgin* v. *Neal,* 82 Cal. 595 [23 Pac. 133] ; *San Gabriel V. C. Club* v. *Los Angeles,* 182 Cal. 392 [188 Pac. 554, 9

A. L. R. 1200]. The evidence in the case at bar was sufficient to bring it within the rule stated.

We find no merit in the claim that defendant had no notice of the dangerous condition which was created by its servants; nor can the fact that the trial court permitted the examination of the defendant's superintendent of sewers under section 2055 of the Code of Civil Procedure, if erroneous, be said to have been prejudicial to a degree which would justify a reversal.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 14, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 13, 1937.