[Sac. No. 5385. In Bank.—August 21, 1940.]

MARY GIBSON et al., Respondents, v. COUNTY OF MENDOCINO, Appellant.

Mannon & Brazier and James E. Busch for Appellant.

Taft & Spurr for Respondents.

THE COURT.—Under the provisions of section 2 of the Public Liability Act of 1923 (Stats. 1923, p. 675; Deering's Gen. Laws of California, 1937, Act 5619, p. 2630), the plaintiffs husband and wife brought this action to recover damages for injuries sustained by the plaintiff Mary Gibson, an aged woman, when she fell down three cement steps at the south entrance of the Mendocino County court house, which is situated in the city of Ukiah, California. The case was tried without a jury and judgment was rendered in favor of the plaintiff wife in the sum of $7,000, and in favor of the husband for $406.75. The defendant's motion for a new trial was made and denied, and thereafter an appeal was taken from the judgment.

The injuries for which recovery is sought were incurred on April 13, 1938, on which day the plaintiff Mary Gibson intended to cross from the south through the county court house as a means of arriving at a street located on the north side of said building. After she had ascended the steps at the south entrance, and as she pushed open the door and

stepped across the threshold, the fire siren sounded, where-upon she immediately turned about and faced toward the street because, according to her testimony, she wanted to hear and count the number of blasts, in order that she might determine the location of the fire, in view of the fact that she had previously suffered a loss through fire at her home. While her back was thus turned to the opened door, and as it swung to a close through the operation of a self-closing device, the door struck her back, or her right side, and she was thrown from the threshold landing down the three steps to the street level,—as a result of which fall she sustained serious and permanent injuries.

The trial court's findings were, in part, substantially as follows: That a steel floor plate, nineteen inches wide (the outer edge of which was flush with the outer edge of the building), was located immediately outside the door on a landing before the threshold; that the said steel plate had originally been of corrugated design to prevent slipping, but that the corrugations in the center thereof had been worn to such an extent that the worn part was smooth and slippery; that the landing on which the plate rested had a downward slope toward the sidewalk (which, together with the wearing of the corrugations on the steel plate, caused a total slope outward of one-half an inch at the place where the plate had worn smooth) ; also, that the self-closing apparatus which was situated on the inside of the door ''exerted a sudden and powerful thrust outward'' when the door was closing; that for a period of more than four years prior to the date of the accident the said entrance had been in a dangerous and de-fective condition, as described herein; that each of two mem-bers of the board of supervisors had personal knowledge of such defective condition for that period of time; that after such knowledge had been acquired by such members the said board had failed and neglected to remedy the same within a reasonable time thereafter; and that the injuries sustained by the plaintiff Mrs. Gibson while lawfully using the entrance were due to the dangerous and defective condition thereof, as hereinbefore described, and to the negligence of the defendant county in so maintaining the entrance.

The appellant county contends that by reason of the fact that Mrs. Gibson knew of the smooth condition of the metal plate, and also of the fact that the door was self-

closing, those asserted defects were "patent defects" and, consequently, that if the injuries sustained by Mrs. Gibson were proximately caused by said patent defects the county would not be liable therefor; furthermore, that the county would not be liable for the injuries sustained by Mrs. Gibson by reason of the fact that at the time of the accident she was not in the act of entering the court house on a matter of business connected with the county and, therefore, she was not an invitee but a mere licensee, to whom the appellant owed no duty except to refrain from causing her wanton or wilful injury.

Although, according to her testimony, it is true that on the occasion of the accident Mrs. Gibson intended to pass through the court house merely as a convenience to herself, it appears from the record that it was the general custom for the residents of that community to cross through the court house as a "short cut" to reach the streets lying to either side of the building. It is likewise true that Mrs. Gibson's testimony showed that she knew of the worn condition of the steel plate and of the fact that the door had a self-closing apparatus attached thereto,—although she testified that she did not know of the force which was exerted by the door in its "outward swing" as it closed. Moreover, a reading of the section of the act here involved discloses the fact that in connection with the liability imposed against a county, municipality or school district, no exemption therefrom is therein expressed where the asserted defects are patent, nor is any distinction indicated as between a licensee or an invitee who may sustain injuries by reason of a defective or dangerous condition of the public property mentioned in the act. In effect, it has been held that the rules with respect to the measure of care to be exercised by owners of private property toward invitees and licensees have no application to the duty imposed by the statute on a county, municipality or school district to maintain public property in a safe condition. Thus, in the case of *Castro* v. *Sutter Creek U. H. S. Dist.*, 25 Cal. App. (2d) 372, 377 [77 Pac. (2d) 509], where the issues involved the applicability of the same section of the act here concerned, the plaintiff, who had accompanied her two daughters to a dance held at an auditorium belonging to a school district, was shown to have received an injury because of having stepped into a hole

as she was "crossing over" a parkway or strip of land lying between the sidewalk and the curbing adjoining a driveway which extended along the south side of the auditorium, which strip of land was owned by the school district, but was intended to be used only as a lawn plot or place for the planting of trees. In that case, where arguments were directed to the question whether at the time of the accident the injured person was a licensee or an invitee, the court ruled that the answer to that question was immaterial and not determinative of the liability of the defendants. The provisions of the section were there set forth to the effect that a county, municipality or school district is liable for injuries to persons and property resulting proximately from the dangerous or defective condition of public buildings, grounds, etc., in *all cases* where the government or managing board of such school district, county, municipality or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such buildings, grounds, etc., and within a reasonable time after acquiring such knowledge had failed to remedy such condition. The court in that case said that the provisions of the section "base liability upon any act which leaves a place or condition dangerous or defective and liable to cause some injury to the *general public*", and that the section was "designed not for the safety, particularly, either of licensees or invitees, . . . ". (Emphasis added.)

In the present case the appellant also contends that the respondents failed to prove that the allegedly dangerous and defective condition was the proximate cause of the injuries to Mrs. Gibson. In that regard the appellant directs attention to the fact that Mrs. Gibson was the sole witness to the accident, and that her testimony was contradictory to the extent that it was impossible to determine therefrom what actually occurred at the time the accident happened. It is argued that under the state of her testimony the court could only guess whether immediately prior to the accident Mrs. Gibson had stood on the metal plate and, if so, whether the condition of the plate was the proximate cause of her fall, or what effect, if any, the closing door had in connection with the accident. On direct examination Mrs. Gibson testified that the accident happened in the following manner: "Well, I opened the door to go in and I pushed it back half

way or more, and just as I stepped in, the siren blew and I stopped to count the whistles, because there was no one at home that afternoon, and I stepped inside one step, I think, and then when the siren blew I turned around right quick to see what I could see and hear, and I stepped forward, I think, *on to the plate,* and the door pushed to; it come to very slow, and then all at once it give me a push and pushed me off . . . Well, I think . . . I was standing pretty well on the out edge [of the metal plate], because I remember being at the edge of the building." (Emphasis added.) On another occasion her testimony was as follows: "Q. You weren't on that iron threshold at the time, were you? A. I think I was. Q. You mean at the time the door struck you? A. Yes, I think I was standing right on it. . . . Of course, I could not swear that I was standing right square on it." Additionally, on a photograph of the steps at the south entrance of the court house, Mrs. Gibson indicated the place where she was standing when she was struck as being a short distance out from the line of the doorway and near the left center of the metal plate. When asked whether she intended that mark to represent the "exact spot" where she was standing, she said, "Well, I couldn't say to that. . . . It was done so quick, you know, you couldn't really tell where you was." Mrs. Gibson was examined and cross-examined by counsel with unusual thoroughness regarding her exact position in or near the doorway at the time of the accident. And although in some instances her replies to such inquiries were vague, and in others inconsistent, in general they revealed merely an inability to remember the exact details with respect to her position immediately prior to the happening of the accident. But, in that regard, counsel for the respondents point out the fact that discrepancies in the testimony of laymen are not unusual, nor are they always vital (*Hollenbaugh* v. *Wickersheim,* 114 Cal. App. 1, 3 [299 Pac. 90]; *Stephenson* v. *Brand,* 122 Cal. App. 543, 546 [10 Pac. (2d) 476]), particularly where, as here, it was shown that immediately before the accident Mrs. Gibson's attention was concentrated on the sound of the fire siren, and on intently listening in order to count the number of its blasts. It was no doubt due to those reasons and to the confusion which attended the happening of the accident that Mrs. Gibson was unable to relate in precise or accurate detail her exact position

immediately before the accident occurred,—and, under such circumstances, the question of the weight to be accorded her testimony was solely a matter for determination by the trial court. However, in giving her testimony Mrs. Gibson was not making an admission or testifying to a fact peculiarly within her own knowledge,—she was merely giving a narration of events as they appeared to her at or immediately prior to the happening of the accident. She, therefore, was not conclusively bound by her own testimony as against circumstantial or other evidence bearing on the question of proximate cause which the fact-finding body might fairly have believed. (*Whicker* v. *Crescent Auto. Co.*, 20 Cal. App. (2d) 240, 243 [66 Pac. (2d) 749], and cases therein cited; *Parker* v. *Manchester Hotel*, 29 Cal. App. (2d) 446, 458 [85 Pac. (2d) 152].)

■ As was said in the last-cited case, it was the duty of the court to determine the proximate cause of the accident not alone from the testimony given by the injured party, but from all the evidence in the case. In the present case, although the evidence was conflicting in certain respects it nevertheless was sufficient to support the finding that the entranceway was in both a defective and a dangerous condition on the date of the accident. The witness Pearl, who was an "approved" building inspector, testified that about two years previously he had discovered that a hazard existed at the south entrance of the court house. In that regard his testimony was that, " . . . going through the door one day, I slid on the plate, and like Mrs. Gibson, I missed all the steps. However I did no damage and landed on my feet at the bottom;" and that "as I went through, the door swung to and helped me as I skidded on this plate, . . . ". However, Pearl testified that it was raining at the time and that although he did not consider that his fall was entirely due to the condition of the entranceway, nevertheless he believed it was augmented by the force of the door in closing. The same witness testified that in May of 1938 he made an inspection of the entranceway; that he examined the operation of the self-closing device on the door and found that it was either out of adjustment or worn out, and that the check did not operate until the door was practically closed, or within approximately six inches of full closure. He further testified that when corrugations are worn smooth on a metal plate such as the one here in question, a hazard is thereby involved.

Another witness testified that approximately in May, 1938, he was struck by the door in question; that in attempting to leave the court house through the door he was obliged to use both hands to pull it open sufficiently for him to pass through; that as he stepped outward, with one foot on the threshold and the other on the steel plate, the door swung to and struck him with such force that he was almost thrown off balance, but that by catching the door knob he prevented himself from falling. Also, a county officer (not a supervisor) testified that he used the south entrance several times a day and that he went down it "pretty carefully" in the wintertime and especially at night.

Although the appellant county has presented much argument to the contrary, from a consideration of all the evidence bearing on the question of proximate cause, including the testimony of Mrs. Gibson as hereinbefore recited, it is clear that the trial court could have drawn the inference that immediately on hearing the siren she faced about and stepped outward on the metal plate—which, as before noted, was but nineteen inches in width; that in thus standing her body projected over the line of the doorway so that the door in swinging to a close with the unusual pressure occasioned by the defective closing device struck her with such force that she was thrown off balance—as well from the impact of the door as by reason of the fact that she was standing on the worn and sloping steel plate.

The contention is also made that Mrs. Gibson was contributorily negligent and in that regard the appellant relies on the rule that where one knows a condition to be dangerous, and is injured because of failure to take heed thereof, such conduct will bar a recovery. It is argued that by reason of the fact that Mrs. Gibson had knowledge of the slippery metal floor plate, and of the force exerted by the door in closing, she was negligent in turning her back to the closing door and in stopping at a point where the door could strike her. But, as hereinbefore indicated, although Mrs. Gibson knew of the worn place on the metal plate and also that the door operated by a self-closing device, she did not know of the unusual force that the door exerted in closing. Moreover, immediately preceding the accident her attention was momentarily diverted by the sound of the fire siren and—as she testified—due to the fact that she had been

"burned out once" and because at the time when the accident occurred there was no one at her home, she quickly turned to listen in order to ascertain the number of blasts, so that she might determine the location of the fire. In that regard, it was said in the case of *Rosella* v. *Paxinos,* 110 Cal. App. 299, 302 [294 Pac. 39], " . . . forgetfulness of a known danger will not always operate to prevent a recovery, for to forget is not negligence unless it shows want of ordinary care, the question being one for the jury. (*Meindersee* v. *Meyers,* 188 Cal. 498 [205 Pac. 1078] ; *Smith* v. *Southern Pac. Co.,* 201 Cal. 57 [255 Pac. 500] ; *Hayward* v. *Downer,* 65 Cal. App. 450 [224 Pac. 265].)" Under all the circumstances herein related, the question whether the conduct of Mrs. Gibson in turning her back to the self-closing door amounted to contributory negligence was for the determination of the trial court, and it cannot be said as a matter of law that Mrs. Gibson was contributorily negligent.

The appellant county further contends that there was no proof that it had actual knowledge of the allegedly dangerous or defective condition complained of. That contention may not be upheld. There was evidence adduced to show that at least two members of the board of supervisors had actual knowledge of the worn and slippery condition of the steel plate, and although one member testified that he did not know and had no reason for concluding that the entranceway was dangerous, the effect of that testimony was, of course, not conclusive. Moreover, the theory of the act here concerned is that liability is imposed "not alone for the dangerous condition, but for the failure to remedy it, upon knowledge or notice thereof". (*Watson* v. *City of Alameda,* 219 Cal. 331 [26 Pac. (2d) 286] ; *Meyer* v. *City of San Rafael,* 22 Cal. App. (2d) 46, 48 [70 Pac. (2d) 533].)

The appellant also argues that there was no pleading and no proof that the condition of the entranceway was dangerous. That contention is likewise untenable. The respondents in their complaint set forth allegations which described the condition of the metal plate with the corrugations worn smooth, its downward slope, and the action of the self-closing door. Those allegations were denied in the answer, so that thereby the issue as to the dangerous and defective condition of the entranceway was clearly tendered, and, as heretofore

has been indicated, there was substantial evidence to show that the entranceway was in a defective and dangerous condition.

It follows from the foregoing that the judgment should be and it is affirmed.

Rehearing denied.