[S. F. No. 18485.   In Bank.   Feb. 21, 1952.]

P. A. STANG et al., Appellants, v. CITY OF MILL VALLEY et al., Respondents.

Charles Reach for Appellants.

Thomas C. Nelson, City Attorney (Mill Valley) for Respondents.

Ray L. Chesebro, City Attorney (Los Angeles), Gilmore Tillman, Chief Assistant City Attorney for Water and Power, and O. M. Lloyd, Deputy City Attorney, as Amici Curiae on behalf of Respondents.

SPENCE, J.—Plaintiffs brought this action to recover damages suffered as the result of a fire on their property, claiming liability against the city and its officials by reason of their failure to maintain certain fire-fighting equipment in condition for effective use in extinguishing said fire. (Public Liability Act, Stats. 1923, ch. 328, § 2, p. 675; 2 Deering's Gen. Laws, Act 5619; now found in Gov. Code, § 53051.) Defendants filed a general and special demurrer to the amended complaint. The demurrer was sustained with leave to amend. Plaintiffs declined to plead further and judgment accordingly was entered for defendants, from which plaintiffs appeal. Consideration of the facts alleged compels the conclusion that the cited act does not justify the imposition of liability upon defendants in this case, and that the judgment must be affirmed.

From the amended complaint it appears that plaintiffs, husband and wife, owned certain real property, with a residence thereon, in the city of Mill Valley; and that on August 8, 1946, without their fault, a small fire ignited the roof of their premises. Plaintiffs allege that for more than one year prior to the fire, defendants—the city, the city manager and fire chief—knew that the water lines leading to the fire hydrant adjacent to plaintiffs' property, and the fire hydrant itself, had become clogged with refuse and were incapable of

providing sufficient water for effective fire control; that it was the duty of defendants, and city funds were available, to remedy that situation, but nothing was done in that regard; that upon outbreak of the fire on plaintiffs' property, the fire department was called and its fire-fighting apparatus arrived in time, had water been available through the clogged mains and hydrant, to have extinguished the fire before it would have caused damage to exceed $25; that no other source of water was available nor was the fire department equipped with chemical apparatus sufficient to put out a minor fire; that because of the inability of the fire department to secure water from the water mains and hydrant, the fire spread, causing damage to the house and personal property of plaintiffs totalling $9,563.50; that this damage was "the direct and proximate result of the failure of defendants to discharge their duties" and to remedy the "defective condition of said public works and property." In joining the city manager and fire chief as defendants, plaintiffs allege that each had control of the fire-fighting apparatus, and had the authority and duty of maintaining such equipment in usable condition.

The determinative question is whether plaintiffs' allegations constitute a cause of action against defendants. It is conceded that fire-fighting is a governmental function (63 C.J.S. § 776, p. 81), and that in the absence of statute, neither a municipality nor its officers are liable in tort for failure to discharge a duty arising from a governmental function. (*Miller* v. *City of Palo Alto*, 208 Cal. 74, 75-76 [280 P. 108]; see 18 Cal.Jur. § 345, p. 1094, and cases cited; annos. 9 A.L.R. 143, 33 A.L.R. 688, 84 A.L.R. 514.) As authority for their action plaintiffs rely on section 2 of the Public Liability Act of 1923, which read: "Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing . . . board of such county, municipality . . . or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such . . . works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or . . . to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition." (Stats. 1923, ch. 328, § 2, p. 675.)

█ The ordinary case coming within the terms of this act involves a situation where the injured person is *using* some type of city property that is dangerous or defective, and which he had a legal right to use, such as public streets (*Fackrell* v. *City of San Diego,* 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625]), highways (*McLaughlin* v. *City of Los Angeles,* 60 Cal.App.2d 241 [140 P.2d 416]), buildings (*Gibson* v. *County of Mendocino,* 16 Cal.2d 80 [105 P.2d 105]), bridges (*Bosqui* v. *San Bernardino,* 2 Cal.2d 747 [43 P.2d 547]), school grounds (*Bridge* v. *Board of Education,* 2 Cal. App.2d 398 [38 P.2d 199]), or other similar property (*Bauman* v. *San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989]). Likewise the act sustains the imposition of liability in the situation where the city is *using* the dangerous or defective property and injury was proximately caused thereby: *Pittam* v. *City of Riverside,* 128 Cal.App. 57 [16 P.2d 768], and *Osborn* v. *City of Whittier,* 103 Cal.App.2d 609 [230 P.2d 132], where the city negligently allowed a fire to spread from a city dump; *Durante* v. *City of Oakland,* 19 Cal.App.2d 543 [65 P.2d 1326], where the city used defective sewer pipes, resulting in the flooding of plaintiffs' property; *Knight* v. *City of Los Angeles,* 26 Cal.2d 764 [160 P.2d 779], where the city negligently installed and maintained street drainage facilities, causing an overflow on plaintiffs' property with damage to the improvements thereon. But here the city did not create the fire causing the damage to plaintiffs' property; rather the claimed fault lies in defendants' failure to provide the means for remedying a condition otherwise created—a different set of circumstances to which plaintiffs seek to apply the act in support of their action.

█ Upon analysis, it clearly appears that the gravamen of plaintiffs' complaint is the failure of a governmental function. Such failure involves the denial of a benefit owing to the community as a whole, but it does not constitute a wrong or injury to a member thereof so as to give rise to a right of individual redress (Restatement of Torts, § 288), which right must be predicated upon the violation of a duty of care owed to the injured party. (*Neuber* v. *Royal Realty Co.,* 86 Cal.App.2d 596, 612 [195 P.2d 501].) █ As the maintenance and operation of a fire department is so distinguished as a governmental function for the public good, it is "well settled that a municipal corporation is not responsible for the destruction of property within its limits by a fire which it did not set, merely because, through the negligence or other

default of the corporation or its employees, the members of the fire department failed to extinguish the fire.'' (38 Am.Jur. § 626, p. 327.) This common-law rule of nonliability of a municipality has been specifically applied in cases where the fire loss was due to an insufficient supply of water because of negligence in the upkeep of the city's waterworks system, in that water pipes and hydrants became clogged and fell into disrepair. (Anno. 163 A.L.R. 348, 356-357.) Therefore it must be determined whether the cited statute, which is the measure of the waiver of governmental immunity, encompasses the liability which plaintiffs seek to impose.

Closely parallel in its facts and legal principles is the case of *Steitz* v. *City of Beacon* (1945), 295 N.Y. 51 [64 N.E.2d 704, 163 A.L.R. 342], where the city was authorized by charter to construct and operate a system of waterworks and to maintain a fire department. A legislative enactment had waived the sovereign immunity of the city, making it liable equally with individuals and private corporations for the wrongs of its officers and employees. Plaintiffs brought an action against the city for damages suffered in the course of a fire which destroyed their property. They predicated the city's liability upon an alleged defective condition in its fire-fighting equipment arising from the failure to keep in repair a ''pressure and flow regulating valve'' in the water system, with the result that there was provided an insufficient quantity of water to combat effectively the fire. In holding the case to turn on the question of ''whether the facts alleged would be sufficient to constitute a cause of action against an individual under the same duties as those imposed upon the city solely because of failure to protect property from destruction by fire which was started by another,'' the court at page 705 succinctly said: ''There was no agreement in this case to put out the fire or make good the loss, and so liability is predicated solely upon the . . . provisions of the city's charter defining its powers of government. Quite obviously these provisions were not in terms designed to protect the personal interest of any individual and clearly were designed to secure the benefits of well ordered municipal government enjoyed by all as members of the community. There was indeed a public duty to maintain a fire department, but that was all, and there was no suggestion that for any omission in keeping hydrants, valves or pipes in repair the people of the city could recover fire damages to their property.

''An intention to impose upon the city the crushing burden

of such an obligation should not be imputed to the Legislature in the absence of language clearly designed to have that effect.''

As further support for its conclusion as to the city's non-liability under the described circumstances, the court referred to the ''controlling'' decision in *Moch Co.* v. *Rensselaer Water Co.*, 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199], where a private water company, under ''a positive statutory duty'' to supply water to a city, was charged with the ''failure to furnish sufficient water under adequate pressure to extinguish the fire before it reached plaintiffs' [property].'' As said in the Steitz opinion (64 N.E.2d at p. 707), the court in the Moch case held that ''the action could not be maintained for a tort at common law or for a breach of statutory duty because the duty was owing to the city and not to its inhabitants and because the failure to furnish an adequate supply of water was at most the denial of a benefit and was not the commission of a wrong.'' Accordingly, the court in the Steitz case refused to construe the statutory waiver of sovereign immunity to contemplate the imposition of a greater liability on the city than would exist against an individual or private corporation charged with like negligence for failure to maintain its fire-extinguishing paraphernalia in usable condition.

█ When the Public Liability Act was enacted in 1923, there were several decisions in this state dealing with the question of the liability of private water companies. Thus it had been held that neither a city (*Ukiah* v. *Ukiah Water & Imp. Co.*, 142 Cal. 173 [75 P. 773, 100 Am.St.Rep. 107, 64 L.R.A. 231]) nor a private citizen (*Niehaus Bros. Co.* v. *Contra Costa Water Co.*, 159 Cal. 305 [113 P. 375, 36 L.R.A. N.S. 1045]) could recover damages from a water company for a property loss by fire due to the company's failure to maintain its water system properly. In the light of these decisions, of which the Legislature presumably had knowledge (23 Cal. Jur. § 159, p. 782; *Miller* v. *McColgan*, 17 Cal.2d 432, 439 [110 P.2d 419, 134 A.L.R. 1424]), it does not seem reasonable to construe the Public Liability Act as intended to impose a greater liability on the city than would prevail against an individual or a private corporation charged with negligence in the administration of its fire protection. (See *Watson* v. *City of Alameda*, 219 Cal. 331, 333 [26 P.2d 286]; *People* v. *Superior Court*, 29 Cal.2d 754, 757 [178 P.2d 1].) The ''crushing burden of such an obligation'' will not be ''imputed to the Legislature in the absence of language clearly designed to have

that effect." (*Steitz* v. *City of Beacon, supra,* 64 N.E.2d 704, 707.) We find no language clearly designed to have that effect in the cited Public Liability Act of 1923.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

Briefly, the question presented here is whether a municipal corporation is liable under our Public Liability Act (Gov. Code, § 53051) for the destruction by fire of plaintiff's home, by reason of its water main and hydrant used for fire protection becoming clogged, thus making it impossible to obtain sufficient water to quench the fire. The majority holds that the case does not come within that act. Certain principles are conceded: (1) That the city's fire prevention function is governmental rather than proprietary, and that in the absence of a statute there is no liability for a tort committed in the course of that activity by reason of the doctrine of sovereign immunity; (2) that the liability act includes governmental as well as proprietary activities; (3) that the liability act covers cases where the injured person is *using* the dangerous or defective city property *and also where the city is using its property or works* and injury is proximately caused thereby; (4) that the choked hydrant constituted a dangerous and defective condition in the city's property known by the city to exist; (5) that funds were available to repair said hydrant; (6) and that such condition was the proximate cause of the destruction of plaintiff's house by fire.

How then does the majority reach the conclusion that the case is not covered by the Public Liability Act? The real basis appears to be that to apply it here would impose a "crushing burden" upon the city. Formally the decision is founded upon the reasoning that there was no liability at common law—no duty of care upon one, public or private, supplying water for extinguishing fires, to the inhabitants of the city. That reasoning appears chiefly from the cases of *Steitz* v. *City of Beacon,* 295 N.Y. 51 [64 N.E.2d 704, 163 A.L.R. 342], and *Moch Co.* v. *Rensselaer Water Co.,* 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199] relied upon and quoted in the majority opinion. In the Steitz case the statute involved was *not* a public liability act; it was nothing more than a waiver of sovereign immunity—of the privilege not to be

sued. Hence the court could not find a duty imposed upon the city to keep its property reasonably safe, from the mere statutory obligation of a city to supply fire protection, and none flowed from a mere permission to be sued. There is further discussion in the same tenor, emphasis being laid on the governmental character of a city's obligation to furnish protection against fire. That argument is, of course, wholly beside the point, because the obligation is here imposed by the Public Liability Act to maintain *all* city property, *whether used governmentally or not*, in a safe condition.

The complete answer to all that discussion is that it is *not* the obligation of the city to maintain a fire department from which flows the duty to maintain its property in a safe condition. *It is the liability act itself.* This act constitutes more than a mere waiver of sovereign immunity which the court considered in the Steitz case. No exceptions are provided in this act. It says that cities *shall* be liable for any injuries to any person or property resulting from the dangerous or defective condition of its property or works. If there is a liability for such condition, there must necessarily be included therein a *duty* to maintain its property in a safe condition—a duty to *all* persons and to *all* owners of *any* property that may be injured by a breach of that duty, including inhabitants as well as others. The cases have uniformly held that the Public Liability Act *created and imposed a duty* upon the public agencies named to maintain their works and property in a nondangerous and nondefective condition, which is not affected or controlled by the common law. It is said in the first case decided by this court which considered the act: "The legislature has removed from the consideration of the case all common law and archaic obstacles that formerly stood in the way of a citizen recovering from a municipality damages for personal injuries suffered from dangerous and defective conditions of public streets, by adopting in 1923 (Stats. 1923, p. 675), the following act . . . the *obligation* of a city to make its highways reasonably safe for general use cannot be chartered away even though a municipality should attempt to do so." (*Rafferty* v. *City of Marysville*, 207 Cal. 657, 660 [280 P. 118].) The District Court of Appeal in discussing the title of the act said: "[T]he second part [of the act], as the title also indicates, creates *an entirely new and different liability, to wit: the liability of the county,—making the county a legal entity, liable for the negligence of its officers in certain cases.*" (Italics by the court.) (*Gorman* v. *County of Sacramento*, 92 Cal.App.

656, 668 [268 P. 1083].) In dealing with the then section 1623 of the Political Code imposing liability on school districts for negligence the same as the Public Liability Act, this court said it (section 1623) *"creates* a liability on the the part of school districts for damages . . . by reason of the negligence of the school district. . . ." (*Ahern* v. *Livermore Union High Sch. Dist.,* 208 Cal. 770, 782 [284 P. 1105].) We said in *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 209 [157 P.2d 625, 158 A.L.R. 625] : "Obviously, the city is not being held as an insurer of anything but it is being held to the standard of ordinary care in planning, constructing, and maintaining its streets and sidewalks. Liability for its failure in that regard is not due to the whimsy of court or jury; it is *imposed* by the public liability statute. . . . It now seeks to justify its conduct by announcing for itself a rule that it assumes no responsibility for the condition of the sidewalk and that pedestrians must use the same at their own risk. But its *legal duty* in the premises is defined by general law (Stats. 1923, p. 675; Deering's Gen. Laws, 1944, Act 5619) and negligence and liability therefor do not depend upon, and cannot be limited by, self-formulated standards." (Italics added.) This court discusses the question in detail in *Gibson* v. *County of Mendocino,* 16 Cal.2d 80, 84 [105 P.2d 105], in determining that the *common law* rules of liability were *not* applicable : "In effect, it has been held that the rules with respect to the measure of care to be exercised by owners of private property toward invitees and licensees *have no application to the duty imposed by the statute* on a county, municipality or school district to maintain public property in a safe condition. Thus, in the case of *Castro* v. *Sutter Creek U. H. S. Dist.,* 25 Cal.App.2d 372, 377 [77 P.2d 509], where the issues involved the applicability of the same section of the act here concerned, the plaintiff, who had accompanied her two daughters to a dance held at an auditorium belonging to a school district, was shown to have received an injury because of having stepped into a hole as she was 'crossing over' a parkway or strip of land lying between the sidewalk and the curving adjoining a driveway which extended along the south side of the auditorium, which strip of land was owned by the school district, but was intended to be used only as a lawn plot or place for the planting of trees. In that case, where arguments were directed to the question whether at the time of the accident the injured person was a licensee or an invitee, the court ruled that the answer to that question was im-

material and not determinative of the liability of the defendants. The provisions of the section were there set forth to the effect that a county, municipality or school district is liable for injuries to persons and property resulting proximately from the dangerous or defective condition of public buildings, grounds, etc., in *all cases* where the government or managing board of such school district, county, municipality or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such buildings, grounds, etc., and within a reasonable time after acquiring such knowledge had failed to remedy such condition. The court in that case said that the provisions of the section 'base liability upon any act which leaves a place or condition dangerous or defective and liable to cause some injury to the *general public'*, and that the section was 'designed not for the safety, particularly, either of licensees or invitees. . . .' ''

There being a duty thus established by the liability act, there remains no reason why the act should not apply to this case.

Reliance is placed by the majority, however, on cases decided before the 1923 liability act, which it says hold that neither a city nor an individual could recover from a water company for a property loss by fire due to the company's failure to maintain its water system properly (*Ukiah* v. *Ukiah Water & Imp. Co.*, 142 Cal. 173 [75 P. 773, 100 Am.St.Rep. 107, 64 L.R.A. 231]; *Niehaus Bros Co.* v. *Contra Costa Water Co.*, 159 Cal. 305 [113 P. 375, 36 L.R.A. N.S. 1045]) and that the Legislature did not intend to abrogate that rule when it adopted the Public Liability Act. The latter premise is at least dubious for there are *no exceptions* in the scope of the liability act. It does not say that it is right for the city to maintain dangerous and defective property used for fire fighting. In any event, these cases are clearly wrong. The inaccuracy of those cases is ably pointed out in referring to *Moch Co.* v. *Rensselaer Water Co., supra*, 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199]: ''. . . Cardozo speaks of the failure of the water company as if it were merely a failure to confer a benefit upon the injured householder, and in denying liability relies upon the recognized principle that one is under no duty to confer a benefit upon another. Of course, the plaintiff did not complain of the failure to receive a benefit. His real ground was that, because of reliance upon the undertaking of the water company to maintain an adequate pressure

at the hydrants, the city had failed to make other provision for the protection of its citizens, and the plaintiff, among others, being lulled into a false sense of security, had failed individually to take measures to protect his property. In substance, the situation does not differ from that where a train cuts a fire hose or blocks a street, so that the fire department cannot extinguish a fire. In both cases the defendant has prevented a third person from rendering assistance. Where the act is after the beginning of the fire, there is an immediacy of need which does not exist in the waterworks situation, yet since it is well known that fires occur from time to time in any town large enough to afford waterworks, there would seem to be such a substantial risk of harm to the group of which the plaintiff is one as would make such cases directly in point. The risk to the individual plaintiff is less, but the chance of harm to any one of a large number is great. Furthermore, in the Moch case, it was alleged that the defendant had failed to keep up the pressure after knowing of the fire. It had been held before the Moch case, as it has been held since, that the negligent breaking of a water main may be the basis of a cause of action in favor of a householder who had been thereby deprived of the assistance of the fire department in quenching a fire. Analogous are the cases where a railroad has undertaken more than its legal duty in supplying at a railroad crossing a watchman upon whose presence travelers frequently using the crossing have relied, and those where an agent in charge of a building has failed to keep it in repair, as a result of which a third person is injured. In these cases where the wrong consists of a failure to act, the older viewpoint was that since there is mere 'nonfeasance' and no direct obligation to the injured person, there can be no liability to him. The fallacy of this older point of view has been today generally exploded. ". . ." (*Cardozo and the Law of Torts*, Professor Warren A. Seavey, 52 Harv.L.Rev., 372, 392.) Many more illustrations may be added to those suggested by Professor Seavey. The fire-fighting equipment may be maintained in a dangerous and defective condition with full knowledge of the city officials— brakes on the automotive equipment may be defective— fire hoses may be defective and burst when water is run through them under pressure—hydrants may be broken off or burst from freezing and no effort made to repair them until water discharging therefrom damages private property. The liability act was obviously intended to apply to situations such

as these. If such dangerous and defective conditions result in loss or damage to property by fire, why should it not be applied to extend protection to a person so damaged? To my mind there is no basis in reason, logic or common sense for the construction placed upon said act by the majority. Under the facts alleged in the complaint and not denied, plaintiffs lost their home as the direct and proximate result of the dangerous, defective and unsafe condition of the fire hydrant which was known by the city officials to exist and they failed to cause said condition to be repaired although funds were available for such purpose.

I would, therefore, reverse the judgment.

SCHAUER, Dissenting.—I concur in the reasoning and conclusion of Justice Carter.

I think the Public Liability Act (Stats. 1923, ch. 328, § 2, p. 675) covers this case. The majority seek to distinguish the many cases upholding and applying that statute by stating that (p. 489) : ''The ordinary case coming within the terms of this act involves a situation where the injured person is *using* some type of city property that is dangerous or defective, and which he had a legal right to use, [citations and illustrations, such as using a defectively engineered or maintained street] . . . Likewise the act sustains the imposition of liability in the situation where the city is *using* the dangerous or defective property and injury was proximately caused thereby . . . [citations and illustrations, such as negligently using defective sewer pipe and negligently maintaining street drainage facilities, contributing to the flooding of plaintiffs' property]. But here the city did not create the fire causing the damage to plaintiffs' property.''

It seems to me that the attempted differentiation is not legally sound or substantial. I would think that a householder is ''using'' a fire hydrant and water supply when he, by himself or a city employe, attaches a hose to it and runs the water to put out an incipient fire in his house. Surely that is a legal use of a facility for which as a taxpayer he is paying. Likewise, the fire department men, and through them, the city, are ''using'' that property when they connect the hose and run the water. And the defective condition of the fire hydrant just as surely contributes, under the circumstances shown here, proximately to cause the damage to plaintiffs' property by fire as does defective sewer pipe or drainage facilities contribute to cause damage in time of

flood.   The majority say ''the city did not create the fire causing the damage''; I point out that in the flood cases the city did not create the water which caused the damage, nor even the law of gravity which impels water to seek a lower level by a direct route.

It is just as much a natural result for a fire, not extinguished, to consume a house built of combustible materials as it is for flood waters, not diverted or safely carried away, to damage property, subject to erosion or seepage, which lies in their path.   Sewers are maintained to (among other uses) safely carry away flood waters; water mains and fire hydrants are maintained to (among other uses) extinguish fires.   A householder in a city pays taxes to obtain, among other things, fire protection as well as flood protection.   The Public Liability Act imposes tort liability on the city for negligently maintaining its property in a defective condition when such condition proximately causes damage while the property is being lawfully used for its designed purpose.   All the conditions for liability imposed by the statute are met here.

This court has been liberal (sometimes, I have felt, more than liberal) in construing statutes and the common law to advance the outposts of tort liability as against private citizens and private corporations.[1]   I think that such liberality of extension—in this case an obviously discretionary interpretation and application of the statute—should more justly be indulged as against the state and municipal corporations than as against private individuals and corporations.

I should reverse the judgment.

[1] See e.g.: *Hunt* v. *Authier* (1946), 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379]; *Johnston* v. *Long* (1947), 30 Cal.2d 54, 81 [181 P.2d 645]; *Raber* v. *Tumin* (1951), 36 Cal.2d 654 [226 P.2d 574]; *Peterson* v. *Burkhalter* (1952), 38 Cal.2d 107, 114 [237 P.2d 977]; see, also, *Rippe* v. *City of Los Angeles* (1942), 50 Cal.App.2d 189 [123 P.2d 47].