[Civ. No. 5962.   Third Appellate District.—March 16, 1938.]

THEODORA CASTRO, Appellant, v. SUTTER CREEK UNION HIGH SCHOOL DISTRICT et al., Respondents.

Robert McMahon and T. G. Negrich for Appellant.

Allen L. Martin, Redman, Alexander & Bacon and Herbert Chamberlain for Respondents.

PLUMMER, J.—In this action the verdict of the jury was rendered in favor of the plaintiff in the sum of $2,573.88, against the defendant district and against the remainder of the defendants as trustees of said school district.   At the conclusion of the plaintiff's case the defendants made a motion for a directed verdict.   The motion was denied.   Thereafter, and upon the rendition of the verdict, the defendants made

a motion that judgment be entered in their favor notwithstanding the verdict. This motion was granted, and from the judgment entered thereupon the plaintiff prosecutes this appeal.

The plaintiff's action is based upon injuries received by her on or about the night of March 20, 1936, by falling into an unguarded hole in a strip of land lying between a sidewalk and the curbing adjoining a street. This strip of land was something over 100 feet in length and approximately 6 feet in width at one end and some 9 feet in width at the opposite end. The strip of land was intended as a lawn plot and place for planting trees. In the testimony it was referred to as a "lawn plot", but in the cases which we shall hereafter cite, is known as and called a "parkway". This strip of land was a part of the premises belonging to the defendant school district. Four holes had been dug in this strip of land approximately 3½ feet in width at the top, 2 feet in width at the bottom, and some 2 feet in depth. The holes were approximately 20 feet apart, and had been dug a number of weeks before the occurrences hereinafter mentioned, and on the night plaintiff was injured were wholly unguarded. The injury occurred to plaintiff by falling into a hole designated as "Hole Number 3" in the testimony. We may here state that Lillian Bowls, a member of the high school faculty, fell into "Hole Number 4" shortly after the accident to the plaintiff.

The record shows that on the night in question the plaintiff went to a dance held at the auditorium belonging to the school district. Her purpose in going to the dance was to chaperon her two daughters. The home of the plaintiff was at a town called "Plymouth". The plaintiff in company with her two daughters, left the town of Plymouth and drove to the auditorium maintained by the trustees of the Sutter Creek Union High School District, one of the daughters driving the automobile for the party. The dance at the auditorium appears to have been held in honor of the success of the high school football squad. The auditorium where the dance was held is a building about 110 feet in depth extending in an easterly and westerly direction, with the main entrance at the east end thereof. In front of the auditorium is a vehicle driveway. This driveway extended around to, and along the south side thereof. Along the full length of the audi-

torium on the south side was first, an earthen strip 3 feet' in width; next to that was a cement walk 6 feet in width; next to the walk was the strip of earth to which we have referred, prepared for lawn sowing. This plot was separated from the driveway by a concrete curb for the full length thereof. It appears that there was a parking area on both the north and south sides of the auditorium. On arrival at the auditorium the appellant's daughter who was driving the automobile, made a circle on the north side in an effort to locate a parking space, and finding none, drove around the front of the auditorium and parked on the south side where other cars were parked along the curb. As the driver of the car was moving along the south side of the auditorium, a parked car backed out and appellant's car was driven into the space thus vacated between two other parked cars. On other and previous occasions the driver of the appellant's car was a passenger in cars that had parked on the south side of the auditorium, against the curb, and the school bus also parked there.

It also appears that on nights when the school team played basketball in the auditorium the bus would bring students to these activities, and would park on the south side of the auditorium. There was testimony to the effect that at the different activities held at the auditorium there were always cars parked on the south side, and that it frequently happened that there were more cars parked on the south side of the auditorium than on the north side. There does not seem to be any illumination on the south side of the auditorium, save and except such as came from a top-story window, from which a ray of light was projected on the ground not far from "Hole Number 3". There appears to have been some light on the driveway which was used by the appellant in going to the auditorium after leaving the car in which she had arrived, but at the time in question the driveway was being used by cars leaving the auditorium.

It appears that the appellant with her two daughters left the auditorium, walked a short distance on the sidewalk which we have mentioned, to a point somewhere in the neighborhood of where their car was parked. There they left the sidewalk and started to cross the lawn plot or parkway which we have mentioned. One of the daughters preceding the plaintiff in starting across this plot, found her-

self gently sliding into "Hole Number 1", and warned her mother to look out for same. The appellant thereupon said she would go where there was light, returned to the sidewalk and proceeded thereon to the rear of the auditorium, a distance of about 60 feet, and then again walked onto the lawn plot about opposite her parked car, and in so doing fell into "Hole Number 3" near the ray of light, as aforesaid, but which hole itself was unlighted, and as we have said, wholly unguarded.

In falling into the hole the plaintiff sustained severe injuries, but as the seriousness of the plaintiff's injuries is unquestioned, and whether the damages awarded by the verdict were or were not excessive, is not presented to us for consideration, the extent of the injuries to the plaintiff and the amount of the damages awarded by the verdict require no further mention.

On the part of the defendants, testimony was introduced to the effect that there were other parking places available for the plaintiff on the night in question, and that these parking places were sufficiently illuminated. That, however, was a question for the jury. The testimony shows that there were a number of cars parked in the neighborhood of where the plaintiff's car was parked, and that that portion of the driveway adjoining the auditorium was frequently used for parking purposes.

We have mentioned the fact that a member of the high school faculty had a car parked in the same neighborhood, and fell into "Hole Number 4". This member of the faculty was accompanied by two other persons going to parked cars. Whether these other persons were accompanying Lillian Bowls to her car or cars belonging to themselves, does not appear. It does sufficiently appear, however, as we have stated, that the place where the appellant's car was parked was being used by the general public when attending functions at the high school auditorium.

The record likewise shows that the parents or mothers of high school girls attending dances at the auditorium were welcome to attend the dances and act as chaperons for their daughters. There is some question as to whether the mothers or parents were expressly invited, or came only because of an understanding that they were welcome. This, however, we think does not affect any legal conclusions to be drawn

from any of the facts attendant upon the injury to the plaintiff.

On the part of the defendants it is further contended that the plaintiff was guilty of contributory negligence in allowing her car to be parked where it was, and also in proceeding across the parkway or lawn plot in order to reach her car, instead of walking down the driveway. That, however, was a question for the jury. It was a case of either walking across the parkway from the sidewalk where there were no cars, or walking down the driveway approaching cars that were leaving the auditorium, and as to whether the appellant was negligent in choosing the course pursued by her, rather than going down the driveway, meeting approaching cars, was certainly a question for the jury, and not at all a question of law for the court.

The record shows that the four holes in question had been dug some weeks previous to the accident, had at all times been left unguarded, and that the officers of the district had personal knowledge of the fact that the holes had been dug, the purposes for which they had been dug, and the fact of the holes being left unguarded.

Upon this appeal both the plaintiff and the defendants have addressed their arguments to the question as to whether the appellant was a licensee or an invitee, and also as to whether the appellant was guilty of contributory negligence as a matter of law.

While the arguments presented regarding the status of the plaintiff as to whether she was a licensee or an invitee at the time of the accident are interesting and learnedly presented, in view of what we are about to add we think it wholly immaterial. Whether licensee or invitee is not at all determinative of the liability of the defendants.

This action comes squarely within the provisions of section 2 of the Public Liability Act, approved June 13, 1923 (Stats. 1923, p. 675, Deering's Gen. Laws of California, p. 2310). That section reads as follows:

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person

having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may· be reasonably necessary to protect the public against such dangerous or defective condition.''

It will be observed that the provisions of the section just quoted bases liability upon any act which leaves a place or condition dangerous or defective and liable to cause some injury to the general public. The act is designed not for the safety, particularly, either of licensees or invitees, but to the general public having occasion to use the premises belonging to the public, and with which public officers are charged with the duty of taking such precautions as may be reasonably necessary to protect the public from such dangerous or defective conditions.

We think it beyond question that the four unguarded holes which we have described fall within the classification of pitfalls or traps. It is within the common knowledge of everyone that the space between a sidewalk and a curbing known as the lawn plot or parkway is frequently crossed over by automobile drivers or automobile passengers to reach cars parked in a driveway along the curbing adjoining such parkway or lawn plot.

The school district in question occupied somewhat the same position as an individual proprietor would occupy with relation to excavations created and maintained so close to sidewalk or highway as to render the same dangerous to the general public. In 19 California Jurisprudence, page 610, section 45, we find the following: ''A proprietor is liable if he makes an excavation upon his land so close to a highway upon which others have a right to travel that one using the highway, while exercising ordinary care, falls therein and is injured . . . In order to bring a case within the foregoing rules it is essential that the excavation or obstruction be at such a proximity to the highway that it might reasonably be expected that injury may occur.''

The parkway in question varied approximately from 6 to 9 feet in width. The holes at the top were 3½ feet wide,

which, at the place where the first hole was dug, if it were dug in the center of the parkway, would leave only approximately 1½ feet from the sidewalk. Just how the lines of the parkway diverge so as to give a width of 9 feet at the extreme end of the same beyond the fourth hole, is not disclosed by the record, but it could not in any place, if the holes were dug in the center of the parkway, have left more than approximately 2½ feet from the sidewalk or the same distance from the curbing. That such excavations, under such circumstances, were both pitfalls and traps requires no argument; just as statement of the facts appears to us conclusive.

A case involving somewhat the same principles as in the instant case is that of *Boothby* v. *Town of Yreka City*, 117 Cal. App. 643 [4 Pac. (2d) 589]. In that case the city had leased the upper story of a firehouse to the county of Siskiyou for the purposes of using the same as a polling place. It appears that the stairway was in a defective condition, of which condition the city had knowledge. The plaintiff was injured by reason of the defective condition of the stairway, and brought an action against the city. In the case referred to the court set out in full section 2 of the Public Liability Act requiring cities and others to take such action as was reasonably necessary to protect the public against dangerous or defective conditions. The city, as owner of the premises, was held chargeable with notice that the premises were to be used for public purposes. It does appear that the plaintiff appeared for the purpose of voting in pursuance of a notice given by the officers of the precinct in which the building was located, and as to the county or precinct might be considered an invitee, but as against the city the plaintiff was simply one of the general public having a legal right to visit the premises. For the time being the premises were being used as public property for the convenience of the voting public within the precinct where the building was located. The court in the case referred to cited a number of cases to the effect that where property is leased for a public use, the care required should be of a higher degree than when the property is leased for private purposes.

Applying the principles to the instant case, which governed the case in holding the town of Yreka City liable, the conclusion would be inescapable that the defendants here are

likewise liable. Before further citing cases as to the liability of the defendants we may call attention to the case of *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513], as to the power of the court concerning the question of contributory negligence. It is there said: " 'It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.' (*Johnson* v. *Southern Pacific R. R. Co.*, 154 Cal. 285 [97 Pac. 520]; *Seller* v. *Market St. Ry. Co.*, 139 Cal. 268 [72 Pac. 1006]; *Herbert* v. *Southern Pacific Co.*, 121 Cal. 227 [53 Pac. 651].)' "

To the same effect is the case of *Southern Pac. Land Co.* v. *Dickerson*, 188 Cal. 113 [204 Pac. 576]. In this case a large number of cases are cited supporting the rule that where there is any conflict in the evidence the question is for the jury and not for the court as a question of law.

In *Knight* v. *La Grande*, 127 Or. 76 [271 Pac. 41, 61 A. L. R. 256], the action was based upon an injury sustained while crossing the parkway lying between a sidewalk and the curbing adjoining a street. The parkway was just a narrow strip left for the purpose of installing telephone poles, fire hydrants, trees, and the planting of grass. It was there held that a city is required to take notice of the fact that pedestrians have occasion to walk over the parkway strip along a street, and although the pedestrian must expect to find such objects as fire hydrants and telephone poles, and must be content with a grassy surface instead of a smooth walk, the city must, nevertheless, exercise due care to have such area in a reasonably safe condition. It was further held in that case that an occupant of an automobile was not guilty of negligence in passing over such parkway to the sidewalk where the car was parked along the adjoining curbing. It was further held that the occupant of an automobile so alighting was entitled to presume that the parkway was in a reasonably safe condition. It was likewise held that what was a reasonably safe condition was a question for the jury. It appears that the plaintiff was in-

jured by falling into a trench. The trench was left unguarded.

In the case of *Butler* v. *McMinnville,* as reported in 126 Or. 56 [59 A. L. R. 381, 268 Pac. 760], we find an extended note supporting every proposition which we have herein stated especially supporting the proposition that the question of contributory negligence under the circumstances was a question for the jury. In the Butler case, *supra,* it was held that the law does not require that a city shall maintain a parked strip in the same condition for travel as it would a paved street or sidewalk, since there are certain obstructions incident to its use, such as electric light poles and signboards, which may rightfully be placed in a portion of the street set·aside and devoted to purposes of ornamentation. However a city has no right to maintain anything in the nature of a pitfall, trap, snare or other like obstruction whereby the traveler, in yielding to the impulse of the average person to cut across a corner in a hurry, may be injured, nor will it be permitted to allow others to do so.

The notes to the Butler case are so extensive that it would unduly lengthen this opinion to make many quotations therefrom, but all the cases cited are to the effect that cities must exercise due care to have such parkways or the lawn plots kept in a reasonably safe condition, and that a member of the general public is not guilty of contributory negligence, as a matter of law, in passing over such parkway. We may safely conclude this opinion with the statement that the annotations found appended to the Butler case, *supra,* are conclusive against the defendants upon every question presented for our consideration upon this appeal.

Following the procedure outlined in the case of *Southern Pac. Land Co.* v. *Dickerson, supra,* it is ordered that the judgment is reversed with directions to the trial court to vacate the order setting aside the verdict, to restore and render the verdict, and to enter judgment in conformity with the verdict, and as thus restored, the verdict and judgment shall be deemed to have been returned and entered as on the date in which this order is complied with.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 15, 1938, and an

application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 12, 1938.