[Civ. No. 19932. Second Dist., Div. One. Apr. 14, 1954.]

PAUL EDWARD LOEWEN, a Minor, etc., Appellant, v. CITY OF BURBANK, Respondent.

Culver Van Buren and Thomas W. Le Sage for Appellant.

Belcher, Kearney & Fargo and George M. Henzie for Respondent.

DRAPEAU, J.—Paul Loewen, the minor plaintiff in this case, was 10 years of age when he suffered a terrible accident.

Employees of the park department of the city of Burbank were removing eucalyptus trees on Keystone Street in that city. They followed a method or routine that had been used by the city for many years. First, branches would be cut off up the trunk of the tree, and it would be topped. Then the workmen would dig the dirt from around the base of the tree and cut off its roots. And then they would pull the tree over with a truck and winch. No ropes or barriers and no warning signs were placed upon the sidewalk. Two signs were on tripods in the street to warn vehicular traffic.

Usually three trees at a time were felled in this manner, sawed into lengths, and trucked away.

On the morning this accident occurred work was being done on the first three-tree batch of the day. The trees had been trimmed and topped the day before. The first and second trees of the batch had been pulled down. Some of the men were working around the first tree; others around the third tree.

At this time Paul scooted up the first tree. No one warned him to stay off. But all the crewmen had been instructed to keep back any children they saw near the trees. No one saw Paul going up the tree except another playmate who was sitting at the base of the tree.

This tree was 20 or 30 feet in length, with a diameter of approximately $2\frac{1}{2}$ feet. It was at right angles to the sidewalk, with its butt at the sidewalk and its top out in the street, the upper end elevated at about a 45-degree angle. The upper end was held up by two or three branches that had been partly cut off.

Paul straddled the tree at its base, and shinnied up and along it until past more than half of its length. Then he slid off the main trunk and put his weight onto a branch that extended out from the trunk. And then the tree canted over and pinned the boy's foot to the ground beneath the stump of the branch.

Paul's foot was crushed. He was in bed for a long time; on crutches for months; and he will have to go limping through the rest of his life with one defective foot. The expense to his parents has been enormous, and in their station in life most difficult to pay. All in all, the pitiful case thus presented appeals to the sympathy of everyone.

At the close of plaintiff's case the trial court granted a

motion for nonsuit, and dismissed the jury. Plaintiff appeals from the judgment that followed.

Plaintiff in his brief asserts "The facts in the case disclose overwhelming evidence that the city created a dangerous and defective condition in leaving a 20- or 30-foot eucalyptus tree, with a diameter of 2½ feet at its base, extending out into the street, resting like a 'sawhorse' on two branches 8 or 10 feet long." Plaintiff earnestly contends that this is a question of fact, not of law, and that under familiar legal rules the question should have been presented to the jury for decision.

As the trial judge carefully and properly informed the jury, this is not the ordinary negligence case. At the threshold of every case involving a governmental agency, every plaintiff must bring himself within the provisions of the public liability statutes of this state.

The city of Burbank was taking down the trees in the exercise of its governmental function. It is only by express statutory permission that any governmental agency may be sued. At common law no one could sue the king, nor any part of the king's government. This state follows the common law, except, and only except when by statute it permits its citizens to sue it.

So in this case we must look to the law to see whether plaintiff's case comes within its scope.

 Neither the state nor any of its agencies is liable for negligence on highways or streets unless the accident happens in the ordinary, usual and customary use of such ways; and the governmental or managing board, officer or person in charge must have knowledge or notice of the defective or dangerous condition, and after acquiring such knowledge, or receiving such notice, must fail to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition. (Public Liability Act, Gov. Code, § 53051.)

Moreover, municipal representatives must not only have notice of the condition, but also notice of the dangerous character of such condition. (*Howard* v. *City of Fresno*, 22 Cal.App.2d 41 [70 P.2d 502].)

 Plaintiff in this case does not bring himself within these requirements; consequently the judgment must stand. The boy's conduct was obviously not the usual and ordinary manner in which the law contemplates that streets are to be used.

In *Beeson* v. *City of Los Angeles*, 115 Cal.App. 122 [300 P. 993], it was held that the Legislature intended to limit the liability of the city for injuries resulting from defective streets, works, or property to damages suffered in the ordinary, usual, and customary use thereof. In that case a 10-year-old climbed into a storm drain to use it as a playground, lost his life, and his parents were denied recovery.

And in *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708 [178 P.2d 472], plaintiff could not state or prove a cause of action for the same reason. In that case another 10-year-old climbed onto a log floating on a pond on public property, fell off, and was drowned.

Plaintiff suggests that the method of taking down trees by the city supplies the knowledge required by the statute. But, as a matter of law, nothing appears in the method used that may be said to be dangerous in any respect.

Having come to this conclusion it is unnecessary to comment upon the many cases cited in plaintiff's briefs. All are to be distinguished, either because they involve rules of negligence in cases not involving governmental agencies, or injuries were suffered after the governmental agency had notice of defective or dangerous conditions on public property.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 3, 1954, and appellant's petition for a hearing by the Supreme Court was denied June 9, 1954. Carter, J., was of the opinion that the petition should be granted.