[Civ. No. 6258.   Fourth Dist.   Dec. 21, 1961.]

HOWARD TORKELSON et al., Plaintiffs and Appellants, v. CITY OF REDLANDS, Defendant and Respondent.

Martin & Camusi, William Camusi and W. Floyd Cobb for Plaintiffs and Appellants.

Thompson & Colegate and Robert D. Allen for Defendant and Respondent.

COUGHLIN, J.—The plaintiffs, appellants herein, brought this action against the City of Redlands, respondent herein, to recover damages under the Public Liability Act (Gov. Code, § 53051) for the death of their 10-year-old daughter who had drowned in a storm drain constructed and maintained by the city; claimed that the storm drain constituted a dangerous condition of which the city had knowledge and failed to correct; and appealed from the judgment entered against them following an order granting the defendant's motion for a directed verdict in its favor.

Under the time-honored rule, if there is any substantial evidence which would support a verdict in favor of the plaintiffs the order of the trial court granting the motion for a directed verdict was in error, and the judgment must be reversed. (*Reynolds* v. *Willson,* 51 Cal.2d 94, 99 [331 P.2d 48]; *Aguirre* v. *City of Los Angeles,* 46 Cal.2d 841, 844 [299 P.2d 862]; *Gallipo* v. *City of Long Beach,* 146 Cal.App.2d 520, 526 [304 P.2d 106].)

Over a period of many years the City of Redlands constructed and maintained storm drains to carry away surplus irrigation and flood waters. One of these drains abutted the rear of the property where Linda Torkelson and her parents lived; was approximately 7,000 feet in length; extended through a residential area; was made of cobblestones; at the point where it adjoined the Torkelson property was an open ditch; but was covered as it traversed several city streets; about four blocks down stream converged into an underground

tunnel for a distance of 1,000 feet; then came into the open but again converged into an underground tunnel for a distance of 378 feet; and eventually discharged into a ravine. The open ditch section of the drain was not fenced, except where adjoining property owners had erected such. No fence had been built on the property occupied by the Torkelsons. At this point the ditch was 3½ feet in depth; approximately 6 feet in width at the top; and narrower at the bottom. Where the ditch went under the street next before converging into the first underground tunnel, i.e., Olive Street, it was 43 inches in height. The opening into the tunnel, which is 168 feet from the Olive Street underpass, narrows to 40 inches in height and 47 inches in width. There was no screen or grating across either the Olive Street underpass or the subsequent underground tunnels.

From the evidence presented, the jury could have concluded that for 25 years children had played in the ditch in question. At one time small boys had ignited a fire in the Olive Street underpass and the city fire department was called. The mayor, who formerly had been a councilman of the City of Redlands, testified that he had seen his 6-year-old child playing in a drainage ditch similar to the one in question; that such a ditch "is attractive for a child to play in"; that he believed "it is a dangerous playground"; and that he told his child he "did not want her playing down in the storm ditch any longer."

On the afternoon of July 11, 1957, Linda Torkelson was playing in the ditch adjoining her back yard; it started to rain; a storm of cloudburst proportions ensued; and within a matter of minutes the ditch was filled to within a foot of the top of the Olive Street underpass. The City of Redlands never had experienced any storm similar in nature or extent to the one in question. Linda was swept downstream by the water; was seen struggling as she went into the Olive Street underpass; subsequently, somewhere in the storm drain, was drowned; and her body was recovered from the ravine into which its waters discharged.

The plaintiffs contend that the construction and maintenance of the storm drain without fences, which would prevent access thereto by a child, and without gratings at the intake entrance to the Olive Street underpass and the intake openings of the subsequent underground tunnels, which would prevent a person from being drawn down into the water, resulted in a condition which was dangerous, particularly to children who were

358

accustomed to playing therein; that the city had knowledge of this danger and the presence of children in the drain; that, after acquiring such knowledge, no action was taken to remedy the condition or protect the general public against it; that their case presented substantial evidence to establish all of the essential elements of a cause of action under the Public Liability Act* upon which they base their claim; and that the trial court erred in granting the defendant's motion for a directed verdict.

The defendant contends that the drain was not dangerous for the purpose for which it had been constructed; that its use as a playground by children cannot be made a basis for liability; and that the trial court properly granted its motion.

When the property of a public agency is in that condition which involves an unreasonable risk of injury to the general public, it is in a dangerous condition within the meaning of the Public Liability Act. (*Hawk* v. *City of Newport Beach,* 46 Cal.2d 213, 217 [293 P.2d 48]; *Gallipo* v. *City of Long Beach, supra,* 146 Cal.App.2d 520, 527; *cf. Acosta* v. *County of Los Angeles,* 56 Cal.2d 208 [14 Cal.Rptr. 433, 363 P.2d 473]; *Gallipo* v. *City of Long Beach,* 164 Cal.App.2d 70, 76 [330 P.2d 91]; *Castro* v. *Sutter Creek Union High School Dist.,* 25 Cal.App.2d 372, 377 [77 P.2d 509].)

Whether such a condition exists ordinarily is a question of fact for the jury to decide (*Ziegler* v. *Santa Cruz City High School Dist.,* 168 Cal.App.2d 277, 281 [335 P.2d 709]; *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144, 153 [108 P.2d 989]), and "each case must be determined upon its own peculiar facts." (*Hawk* v. *City of Newport Beach, supra,* 46 Cal.2d 213, 217.)

One of the factors pertinent to a determination of the question whether the condition of public property is dangerous to the general public, is the use to which that property is put. The respondent has cited a number of cases which indicate that liability is limited to injuries sustained in the ordinary, usual and customary use of the public property in which the alleged dangerous condition exists, i.e., *Betts* v. *City*

---

*Government Code, section 53051:

''A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

''(a) Had knowledge or notice of the defective or dangerous condition.

''(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition.''

& County of San Francisco, 108 Cal.App.2d 701, 703-704 [239 P.2d 456]; Demmer v. City of Eureka, 78 Cal.App.2d 708, 713 [178 P.2d 472]; Howard v. City of Fresno, 22 Cal.App.2d 41, 45 [70 P.2d 502]; Woodman v. Hemet Union High School Dist., 136 Cal.App. 544, 553 [29 P.2d 257]; and Beeson v. City of Los Angeles, 115 Cal.App. 122, 132 [300 P. 993]; see also Loewen v. City of Burbank, 124 Cal.App.2d 551, 553 [269 P.2d 121]; Gentekos v. City & County of San Francisco, 163 Cal.App.2d 691, 696 [329 P.2d 943]. The opinions in some of these cases contain language referring to the use of such property "for the purpose intended" (Gentekos v. City & County of San Francisco, supra, 163 Cal.App.2d 691, 696), its "intended lawful use" (Howard v. City of Fresno, supra, 22 Cal.App.2d 41, 45), and its use for purposes inconsistent with those for which it was intended. (Beeson v. City of Los Angeles, supra, 115 Cal.App. 122, 132.) Respondent relies upon these statements and contends, in substance, that the ordinary, usual and customary use of property is that use for which it was designed or originally intended; claims that Linda was using the ditch as a playground; that this was not its designed or intended use; that her death resulted from a use inconsistent with that for which the ditch was designed or intended; and, for this reason, the city is not liable therefor. This concept is a limitation upon the scope of the stated rule not justified either by reason or precedent. In many cases the liability of a public agency for injuries caused by the dangerous condition of its property has been affirmed even though such injury arose out of a use thereof other than that for which it was designed or originally intended. (Acosta v. County of Los Angeles, supra, 56 Cal.2d 208; Hawk v. City of Newport Beach, supra, 46 Cal.2d 213; Gibson v. County of Mendocino, 16 Cal.2d 80 [105 P.2d 105]; Gallipo v. City of Long Beach, supra, 164 Cal.App.2d 70; Gallipo v. City of Long Beach, supra, 146 Cal.App.2d 520; Castro v. Sutter Creek Union High School Dist., supra, 25 Cal.App.2d 372, 377; Huff v. Compton City Grammar School Dist., 92 Cal.App. 44, 47 [267 P. 918].) An ordinary, usual and customary use, for the purpose at hand, includes that which reasonably should be anticipated, even though without the bounds of the designed or originally intended use (Acosta v. County of Los Angeles, supra, 56 Cal.2d 208, 210; Castro v. Sutter Creek Union High School Dist., supra, 25 Cal.App.2d 372, 377; cf. Howard v. City of Fresno, supra, 22 Cal.App.2d 41, 45), and any established actual use which, being known to and acquiesced in by the

public agency owner, has converted or enlarged the designed or originally intended use. (*Hawk* v. *City of Newport Beach, supra,* 46 Cal.2d 213, 216-217; *Ziegler* v. *Santa Cruz City High School Dist., supra,* 168 Cal.App.2d 277, 281; *Gallipo* v. *City of Long Beach, supra,* 164 Cal.App.2d 70, 75; *Gallipo* v. *City of Long Beach, supra,* 146 Cal.App.2d 520, 528; *cf. Bauman* v. *City & County of San Francisco, supra,* 42 Cal. App.2d 144, 153.) It should be noted that the actual use thus considered must be an established or customary use as distinguished from a casual or unusual use. (*Ziegler* v. *Santa Cruz City High School Dist., supra,* 168 Cal.App.2d 277, 280-283.)

A use of property for a purpose other than that for which it was intended or designed may constitute contributory negligence, depending upon the circumstances, and thus foreclose recovery by the injured person (*Ford* v. *Riverside City School Dist.,* 121 Cal.App.2d 554, 561 [263 P.2d 626] ; *Betts* v. *City & County of San Francisco, supra,* 108 Cal.App.2d 701, 702, 704; *Demmer* v. *City of Eureka, supra,* 78 Cal.App.2d 708, 712, 714; *Beeson* v. *City of Los Angeles, supra,* 115 Cal. App. 122, 132), but does not foreclose a consideration of that use in determining whether a dangerous condition is present. Many of the decisions relied upon by the respondent, fundamentally, are based on a determination that the evidence at hand established the existence of contributory negligence as a matter of law. Each of these cases, i.e., *Betts* v. *City & County of San Francisco, supra,* 108 Cal.App.2d 701, 702, *Demmer* v. *City of Eureka, supra,* 78 Cal.App.2d 708, 712, 714, and *Beeson* v. *City of Los Angeles, supra,* 115 Cal.App. 122, 132, involved injuries arising out of the use of pools of water, and applied the now discarded rule which foreclosed recovery therefor as a matter of law, upon the ground that such injuries were caused by a dangerous condition common in character, obvious to all persons, including children. (See *Reynolds* v. *Willson, supra,* 51 Cal.2d 94, 104, 108, which interpreted the basis for the decisions in the foregoing cases. See also *King* v. *Lennen,* 53 Cal.2d 340, 345 [348 P.2d 98], and *Garcia* v. *Soogian,* 52 Cal.2d 107, 111 [338 P.2d 433], rejecting the former rule.) Other cases cited by the defendant in support of its position are distinguishable from the case at bar for the reason that the decisions therein primarily were based on a finding, as a matter of law, that the public agency had no knowledge of the use of its property without the sphere of its designed or intended purpose and a consequent lack of knowl-

edge of the dangerous condition of that property arising from the actual, as distinguished from the designed or intended use, being made of it. (*Loewen* v. *City of Burbank, supra,* 124 Cal.App.2d 551, 553; *Ford* v. *Riverside City School Dist., supra,* 121 Cal.App.2d 554, 561-562; *Howard* v. *City of Fresno, supra,* 22 Cal.App.2d 41, 45.)

We hold that in determining whether public property constitutes a dangerous condition the use factor to be considered in making such determination includes not only its designed or originally intended use, but every other reasonably anticipated use and also any use actually being made of it, conditioned always upon the fact that the owning agency has knowledge of its actual use, and conditioned further upon the fact that such use is not a mere casual one but a customary use.

The evidence in the case at bar is sufficient to support a finding that, for many years, children frequently played in the ditches which were a part of the storm drain in question; that the drain traversed a residential area and abutted the back yards of many homes; that its ditches were not fenced and the openings to its underground tunnels were not guarded by any type of grating; that such lack of fences or grating presented an unreasonable risk of injury to the children playing in the ditches, as well as to the general public, and thus constituted a dangerous condition; and that the legislative body of the city, and persons authorized to remedy this condition, had knowledge thereof, but failed to take any action to protect the public from injury which might result therefrom. Knowledge of the dangerous nature of a condition may be constructive as well as actual (*Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 427 [260 P.2d 55]; *Gallipo* v. *City of Long Beach, supra,* 146 Cal.App.2d 520, 527); and may be established by evidence of the existence of such a condition for a long period of time. (*Bauman* v. *City & County of San Francisco, supra,* 42 Cal.App.2d 144, 153; *Kirack* v. *City of Eureka,* 69 Cal.App.2d 134, 140 [158 P.2d 270].) The evidence that during a period approximating 25 years children played in the ditches which were a part of this drain, would have justified the jury in finding that the city officers who were responsible for the condition of the drain had knowledge of such use; that the lack of fencing permitted these ditches to be used for this purpose; that the lack of any grating over the underground tunnel openings involved a risk of injury to a child who might be

caught in the upstream ditch by the waters of a sudden storm and hurled into the unguarded tunnel to be drowned; and that the situation thus presented constituted a dangerous condition within the meaning of the Public Liability Act. Furthermore, the evidence would support a finding of actual knowledge of a dangerous condition. The city constructed the storm drain and knew that its ditches were not fenced and the openings into its underground tunnels were not grated. The jury could have concluded that the lack of any grating over these tunnels constituted an inherent danger to anyone who might be in an upstream ditch when it was filled with and carrying storm waters; that the presence of a person therein reasonably should have been anticipated; that the converging of the waters from the open and comparatively large ditch into the closed and much smaller unguarded tunnels constituted a trap for any such person; and that, for these reasons, the drain as constructed constituted a dangerous condition of which the city had actual knowledge. (*Fackrell* v. *City of San Diego*, 26 Cal.2d 196, 203, 206 [157 P.2d 625, 158 A.L.R. 773].) In this connection it should be observed, that the manner by which a person might get into the upstream ditch is not a controlling factor in determining whether the storm drain as constructed was dangerous. Such a person might get into the ditch by accident, i.e., as the result of a fall from the banks of his own property, or from the edge of one of the streets under which it passes; might be there in pursuit of a customary use, such as that made of it by the children referred to in the case at bar; or might be there for some other reason. The important factor is the condition of the drain in the light of a reasonably anticipated presence of some person in an upstream ditch, and the lack of any grating to protect such a person from being drawn into a downstream underground tunnel by a flow of storm water which it was intended to carry away. It is pertinent to interject that whether the presence of a person in the ditch should be anticipated is a question of fact; also, that a decision on the issue of the dangerous condition of the drain should not be confused with a decision on the issue of contributory negligence; and that as to the latter issue, the importance of the manner by which an injured person got into the ditch is readily apparent. The issue as to whether or not the storm drain in question constituted a dangerous condition should have been submitted to the jury.

In the course of the trial objections to certain questions propounded by the plaintiffs were sustained upon the

ground that the evidence sought to be elicited thereby was immaterial; thereupon they offered to prove that the City of Redlands enacted an ordinance requiring subdividers to improve all streets or easements in a proposed subdivision in accord with standard specifications approved by the city engineer including those involving drainage and drainage structures necessary to the public safety; that the standard specifications referred to in the ordinance required all such subdividers to cover all storm drains which pass through the area to be subdivided; that compliance with said requirement was a condition precedent to approval of any subdivision map; and that a section of the storm drain in question had been covered pursuant thereto. The plaintiffs contend that this evidence was admissible as proof that the city had knowledge that its uncovered storm drains constituted a dangerous condition. We agree with this contention. Even though such evidence might not be admissible to prove that an open storm drain constituted a dangerous condition, when offered upon the premise that proof of such dangerous condition was established independently thereof, the evidence in question tended to show that the city had knowledge of such condition; was material to the latter issue; and its rejection was error.

Intermingled in its argument respecting the insufficiency of the evidence to establish the existence of a dangerous condition, are the conclusions of the defendant that, as a matter of law, Linda's death was caused by her own negligence or was not proximately caused by any condition existing in the storm drain. Under the circumstances presented by the evidence in this case, the issue of contributory negligence properly should have been submitted to the jury (*Hawk* v. *City of Newport Beach, supra,* 46 Cal.2d 213, 217-218) and, likewise, the issue of proximate cause. (*Jones* v. *City of Los Angeles,* 104 Cal. App.2d 212, 217 [231 P.2d 167].)

The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.