[Civ. No. 23070.   First Dist., Div. Two.   Aug. 18, 1966.]

ALINE E. ROWAN, Plaintiff and Respondent, v. THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

310

Thomas M. O'Connor, City Attorney, and R. J. Reynolds, Deputy City Attorney, for Defendant and Appellant.

Marvin E. Lewis, Lewis & Stein and Ronald H. Rouda for Plaintiff and Respondent.

TAYLOR, J.—The City and County of San Francisco (hereafter city) appeals from a judgment rendered on a jury verdict in favor of plaintiff for damages for personal injuries sustained as the result of a fall caused by a defective sidewalk. The city contends that the trial court erred in: (1) the denial of a nonsuit as plaintiff misled the city about the location of the accident; (2) the admission of evidence concerning budgetary requests for additional sidewalk inspectors; (3) the rulings on the examination of a city ambulance driver under section 2055 of the Code of Civil Procedure; and (4) the instructions to the jury.

As no contentions are raised concerning the sufficiency of the evidence, a brief summary of the facts will suffice. About 11:45 p.m. on January 27, 1961, plaintiff, then 54 years old, was returning home from her job as a practical nurse. For about two years she had lived at 2100 North Point Street, about two and one-half blocks beyond the place of her fall near the northeast corner of the intersection of Scott and Alhambra Streets. As was her custom, plaintiff got off the bus at Fillmore and Chestnut Streets and was walking north on Scott toward Alhambra. When she was a little more than half way up the block on the east side of Scott, her foot caught in a hole in the sidewalk. She fell and broke her hip. The sidewalk area was dark. Plaintiff walked home on the east side of Scott Street about half of the time but had never noticed any particular defects in the sidewalk. When she fell, she knew she was near the corner of Scott and Alhambra but did not know the exact location of her fall as she was in intense pain before being picked up by the city ambulance.

On March 2, 1961, plaintiff filed a timely claim against the city indicating the fall had taken place "Approximately in

front of 3350 Scott St.'' The complaint in this action was filed in April 1961.

In April 1961 the city's sidewalk inspector made a detailed investigation of the sidewalk in front of 3348-3350 Scott, as well as the sidewalks in front of the building immediately to the north, 3354-3356, and the building immediately to the south, 3342-3344. This investigation revealed a new sidewalk in front of 3354-3356 which sloped downward to the north of the sidewalk in front of the building at the northeast corner of Scott and Alhambra, 3358-3360; the sidewalk in front of 3342-3344 and 3348-3350 contained various holes, depressions and cracks. The city took several pictures, one of which also showed that the sidewalk in front of the corner building at 3358-3360 Scott contained several sizeable holes[1] near the junction of the south property line with the new sidewalk in front of 3354-3356. Near the north property line there was a crushed area 2″ x 6″ in diameter and a ''high joint''—one slope of concrete lower than the abutting adhesive concrete. A subsequent inspection by the city of the sidewalk in front of 3358-3360 showed that some of the holes were patched. In addition, the sidewalk in front of 3358-3360 Scott sloped 3 inches in 3 feet from north to south to one of the above mentioned holes. It was constructed with this slope by the City and County of San Francisco. Before a sidewalk can be constructed with such a slope, permission of the city's director of public works must be obtained. There was no record of any such permission for No. 3358-3360.

At the time of the accident, the city's department of public works employed from six to ten inspectors who inspected streets and sidewalks along with their other duties. The department's requests for an increase in its budget for additional sidewalk inspectors were repeatedly vetoed by the Mayor. No area inspection of the intersection here involved had been made since 1947. However, about nine years before the accident, the city had done some resurfacing work on Scott Street and the sidewalks were inspected at that time. The broken area in the sidewalk in front of 3358-3360 could have been caused by the city's rollers at the time of the resurfacing.

The city first argues that the court erred in denying its motion for nonsuit because plaintiff failed to comply with

---

[1]The largest of these holes was 9″ x 2″ x 3″ and up to 3/4″ deep; another measured 3″ x 1″ x 1″ to 3/8″ deep; a third 4″ x 3/4″ to 3/8″ deep; and a fourth 10″ x 1″ to 1 1/2″ deep.

sections 53052 and 53053 of the Government Code which, so far as pertinent, then required that the claim specify the place of the accident. The claim against the city filed by plaintiff indicated that the fall had taken place "Approximately in front of 3350 Scott St." The complaint likewise placed the fall on the sidewalk at a point 60 to 70 feet south of Alhambra Street on the easterly side of Scott Street, which would be in the vicinity of 3348-3350 Scott. In October 1963 plaintiff filed an amendment to her complaint joining as a defendant one Capovilla, the owner of the property at 3348-3350, alleging that the defects causing her fall and injury existed in a special use driveway constructed across the sidewalk of the Capovilla premises. On January 9, 1964, the city filed a cross-complaint for declaratory relief against Capovilla. In June 1964 Capovilla filed a motion for summary judgment accompanied by an affidavit signed by the city ambulance driver, stating that he had picked up plaintiff immediately in front of the corner property at 3358-3360 Scott Street instead of 3348-3350 Scott Street. Plaintiff joined in the motion for summary judgment and subsequently the court rendered judgment in favor of Capovilla and against the city on the cross-complaint.

At the close of plaintiff's evidence, the city moved for a nonsuit on the ground that plaintiff had not correctly stated the place of the accident and had for a period of several years misled the city as to its correct location. The motion was denied. The city now argues that the court erred and it was fatally prejudiced in preparing its defense. We cannot agree.

The plain purpose of the notice statutes was to inform the public body of the accident upon which a claim for damages was based, to permit its agents to investigate the facts as to the time, place and condition of the premises and thus decide whether the case should be settled or litigated. The courts have been liberal in requiring nothing more than substantial compliance. In *Johnson* v. *City of Oakland,* 188 Cal.App.2d 181, 183 [10 Cal.Rptr. 409], where the fall was caused by a defective sidewalk in front of 1819 34th Avenue, but the verified claim incorrectly indicated 1819 35th Avenue, we held that the substantial compliance requirement had been met and reversed a summary judgment for defendant city. In *Parodi* v. *City & County of San Francisco,* 160 Cal.App.2d 577 [325 P.2d 224], this court found substantial compliance although the claim referred to the wrong intersection. The same result was reached in *Johnson* v. *City of Los Angeles,*

134 Cal.App.2d 600 [285 P.2d 713], where the plaintiff tripped on a hole in the sidewalk on the southwest corner of an intersection but the claim specified the southeast corner. ■■■ On authority of these cases, the court properly denied the city's motion for a nonsuit.[2]

The circumstances relating to the mistaken notice do not indicate bad faith by plaintiff nor undue prejudice to defendant. The records of the ambulance driver and the emergency hospital, both city agencies, noted the proper location of the accident. The investigation of the city inspector covered the sidewalk for several frontages in each direction from the location specified in the claim, as the inspector was experienced and knew that often claimants could not accurately pinpoint the location of a sidewalk accident. One of the pictures taken by the city during the original investigation showed a portion of the sidewalk in front of 3358-3360 Scott where the injury occurred. Although the city may have been somewhat prejudiced in concentrating its initial investigation and picture taking on the incorrect location, plaintiff was likewise prejudiced. In *Johnson* v. *City of Los Angeles, supra,* the court rejected the claim of plaintiff's bad faith although the city did not know of the error in location until the beginning of the trial. Here, the correct location was known to all parties a year before the trial began. We conclude that there was no showing of a deliberate intent to deceive and the prejudice, if any, was slight and applied equally to both parties.

■■■ Defendant next contends that the trial court erred in admitting evidence of the 1962-1963 and 1965-1966 budgetary requests made after the accident by the department of public works. These requests sought additional sidewalk inspectors to minimize accidents and resultant litigation. To allow the evidence of such requests and the reasons given therefor might tend to discourage the taking of subsequent precautions and could be considered contrary to sound public policy (*Helling* v. *Schindler*, 145 Cal. 303, 313-314 [78 P. 710]). However, the uncontradicted evidence indicated that there had been no inspection of the whole area since 1947 and that the last time the particular sidewalk had been inspected was at the time of resurfacing on Scott Street between October 1952 and February 1953, about nine years before plaintiff was injured. There was also evidence that in 1961 there were not more than ten,

---

[2]Authorities such as *Hall* v. *City of Los Angeles*, 19 Cal.2d 198 [120 P.2d 13], holding that a claim is fatally defective if it completely omits to designate the place of the accident are clearly not pertinent.

and possibly only six, inspectors looking for defects in the sidewalks of San Francisco and this was in connection with their other duties. Furthermore, similar budgetary requests made by the city's public works department prior to the accident were admitted into evidence without objection. In view of such damaging and uncontradicted testimony, we conclude that the admission of the 1962-1963 and 1965-1966 budget requests was not prejudicial to defendant's case.

The city argues that it was error to allow plaintiff to call the city's ambulance driver under section 2055 of the Code of Civil Procedure. The pertinent language of the section, as amended in 1951, allowing an "employee of a municipal corporation which is a party to the action or proceeding" to be called as an adverse witness, has never been construed. The city's argument would require us to limit the application of the statute to matters or transactions within the employee's knowledge and which relate to his duties or services to the employer.

No such purpose appears on the face of the statute or from its legislative history. ■ Rather, it appears that the purpose of the broadening amendments was to make the tactical advantage of the cross-examination under section 2055 available to the adverse party on the rationale that an employee is naturally reluctant to give testimony against his own employer. ■ Where the words of a statute are clear, we cannot add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history (*People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1]). ■ In construing a statutory provision, we are not authorized to insert qualifying provisions and we may not rewrite the statute to conform to an assumed intention which does not appear from its language, but are limited to the construction of the plain language of the statute as enacted and the intention therein expressed (*Vallerga* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 313 at 318 [347 P.2d 909]).

■ We conclude that the ambulance driver was properly cross-examined under section 2055 about both the location of the accident and his observations concerning the condition of the sidewalk. In any event, neither his testimony at the trial nor the contents of his improperly admitted affidavit[3] on the

---

[3]Affidavits being hearsay may not be used in evidence except where permitted by statute and section 2009 of the Code of Civil Procedure permitting their use on motion has no relevance here (*Fewel* v. *Fewel,* 23 Cal.2d 431, 438 [144 P.2d 592]; *Lacrabere* v. *Wise,* 141 Cal. 554, 556 [75 P. 185]).

subject were prejudicial as it was merely cumulative of the testimony given by the city's own sidewalk inspector.

All parties agree that the court erred in preventing the city from questioning the ambulance driver at the close of his testimony under 2055. The court acknowledged this error at the trial and thereafter permitted such examination of other witnesses but refused to require plaintiff to produce the driver at the city's request. The city's contention that this constituted prejudicial error is without merit. The city's own employees were readily available to it. Under such circumstances, it would have been unreasonable and unnecessary to cast the duty to produce on plaintiff.

The city next contends that the trial court erred in giving the following instruction: ''You are instructed that the fact that an inspection by the City officials responsible for the inspection of City sidewalks had not been made within a particular length of time prior to the plaintiff's accident may warrant an inference that the defective condition existed long enough so that a person exercising reasonable care would have discovered it.'' The city, citing *Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361 [54 P.2d 725], argues that the instruction was not a correct statement of the law since in order to be charged with implied or presumptive notice, it must be shown that had the city exercised reasonable supervision, it would have discovered the condition a sufficient time before the accident *to have had a reasonable opportunity to guard against injury from it.* This contention is without merit. The record indicates that the jury was fully instructed on the city's liability under the applicable statutes, the doctrine of constructive notice, the fact that the city was not an insurer, and *what constitutes a reasonable time after notice within which a city must remedy a defective condition (Johnson* v. *City of Palo Alto,* 199 Cal.App.2d 148 [18 Cal.Rptr. 484]; *Rodriguez* v. *City of Los Angeles,* 215 Cal.App.2d 463 [30 Cal.Rptr. 180]).

The instruction complained of was based on a statement in *Mackoff* v. *Biltmore Garages, Inc.,* 222 Cal.App.2d 846, at pp. 849-850 [35 Cal.Rptr. 462, 4 A.L.R.3d 930], that the existence of a dangerous condition could be proved by circumstantial evidence such as the lack of inspection within a particular period of time prior to an accident. The city attempts to distinguish *Mackoff* by arguing that there the defendant garage had a constant duty to inspect aisles of its public garage for the accumulation of oil slick. The distinction is of no pertinence

here in view of the uncontroverted evidence that the particular sidewalk had not been inspected for nine years—certainly a reasonable time for the city to both discover and remedy any defects. There was also testimony from the city's own inspector that the cracks in the sidewalk in front of 3358-3360 Scott Street could have been caused by the city's rollers at the time of the resurfacing nine years before the accident.[4]

We do not agree with the city's contentions that the above instruction unduly emphasized or singled out a portion of the evidence nor did the court err in refusing certain instructions offered by the city even though they appear to be proper statements of the law. The court correctly, fairly and with balance instructed the jury on the rights and duties of the parties and adequately covered the basic questions of ordinary care, proximate cause and contributory negligence.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied September 16, 1966, and appellant's petition for a hearing by the Supreme Court was denied October 14, 1966.

---

[4]The cases cited by the city are not pertinent: in *Nicholson, supra,* the sidewalk defect in question was a minor irregularity which did not fall within the doctrine of constructive notice. The accident here, unlike that in *Loewen* v. *City of Burbank,* 124 Cal.App.2d 551 [269 P.2d 121], occurred in the plaintiff's ordinary and usual use of the sidewalk.