J. Irwin Shapiro, J.
In this action for personal injuries the jury rendered a verdict of $60,000 against the defendant Briarwood Estates, Inc., hereinafter referred to as the defendant. The court reserved decision on defendant’s motions made at the close of the plaintiff’s case and renewed at the end of the entire case to dismiss the complaint for failure of proof. Decision was also reserved on defendant’s motion to set aside the verdict on all of the grounds set forth in section 549 of the Civil Practice Act (except inadequacy) and for a direction of a verdict in its favor.
Defendant urges that no prima facie case was established because plaintiff failed to prove its negligence and that as a matter of law he was guilty of contributory negligence. In determining what is or is not negligent conduct, one cannot deal in a vacuum. Negligence, or its absence, is always relative to time, place and circumstance. (Mink v. Keim, 291 N. Y. 300, 304.) There is no rule of thumb to follow. As Chief Judge Conway said in Ferrara v. Galluchio (5 N Y 2d 16, 22) quoting from Bird v. St. Paul Fire & Marine Ins. Co. (224 N. Y. 47, 52, 53): “ Each negligence case must * * * be solved pragmatically.’ ” It *256 follows, therefore, that in order to properly pass on defendant’s contention a complete analysis of the evidence adduced at the trial is essential.
In view of the verdict in plaintiff’s favor, the court, in analyzing the record, must give plaintiff the benefit not only of all the facts presented but of all favorable inferences that can be drawn therefrom. (Philpot v. Brooklyn Baseball Club, 303 N. Y. 116.)
Thus viewed, the record shows that defendant was engaged in the. construction of a number of one-family homes in Massapequa. D. & S. Carpenter Contractors (hereinafter referred to as D & S) were hired as subcontractors for the carpentry labor. About January 25, 1955 D & S employed plaintiff as one of the carpenters to shingle the sides of the buildings. For the first few days plaintiff shingled areas readily accessible from the ground. On January 28, 1955 it became necessary for him to shingle the upper portion of a split-level building. To do so he found it necessary to erect a scaffold. This was constructed by erecting three posts placed upright at various intervals in front of the siding. The uprights were made firm by metal V-brackets affixed to the side of the building. Planks were then placed between them under which jacks were inserted to raise and lower the planks to the required elevation. The brackets and jacks were plaintiff’s personal property but the planks and 12 two-by-fours, which were to be used as posts, were supplied by defendant. There were 12 two-by-fours, 6 of which were 6 feet in length, the other 6 being 12 feet in length. Two of each length were nailed together by plaintiff with tenpenny nails so as to make 3 four-by-four posts 18 feet in length.
In order to get the necessary lumber for the scaffold, plaintiff requested some from John Magee, an agent for defendant. Magee “used to come by and inspect every so often; and * * * would stop by and see what we were doing.” D’Agostino (of D & S), plaintiff’s own boss, was not on the job steadily; plaintiff saw him only once or twice during the day. Magee directed a laborer to get the lumber for the making of the scaffold from a pile about a block and a half away. Sometime between 12 noon and 12:30 p.m. the laborer brought plaintiff the planks and the 12 two-by-fours. When plaintiff started nailing the two-by-fours together he called Mr. Magee’s attention to their “ generally bad condition.” The bad condition was described as “running lines, cracks and when it is bad lumber you can tell from the outside face. * * * It was full of knots on the outside ”. Magee insisted that it was “ O.K.” to use and stated, “ They all use that on the job; there is nothing *257 wrong with it; go ahead and use it. ’ ’ Plaintiff stated that the doubts he had as to the safety for use of the two-by-fours were removed by Magee’s assurance that they were all right. He further testified that he did not “ send to the stock pile ” for other two-by-fours since he had no right to do so; that for him to go there himself entailed walking quite a distance (more than 400 yards) though there was “nothing to stop” him from doing so.
While plaintiff was on the plank, 10 feet above the ground, one of the upright posts broke precipitating him to the ground, as a result of which he sustained injuries. Half of the post, which was attached to the bracket, remained “ in the air.” The other half came down with the planks to the ground. The portion of the post on the ground “ was rotted on the inside where it had broke.”
The issues were submitted to the jury on the theory of common-law negligence exclusively. Defendant, as supplier of the two-by-fours, with knowledge of the use to which they were to be put, was under a duty to furnish posts which were reasonably safe for that use. (Restatement, Torts, § 389; see, also, § 408, comment c.) Moreover, implicit in the verdict is a finding that defendant’s employee Magee was negligent in giving plaintiff a direction to work under an assurance of safety when he knew or should have known that the posts were defective. (Broderick v. Cauldwell-Wingate Co., 301 N. Y. 182, 186, 187; see, also, Zurich Gen. Acc. & Liab. Ins. Co. v. Childs, 253 N. Y. 324; cf. Reinzi v. Tilyou, 252 N. Y. 97, 101.)
Negligence thus existing, we now come to defendant’s contention that in any event plaintiff was guilty of contributory negligence as a matter of law. The issue of plaintiff’s contributory negligence was submitted by the court to the jury in the following form:
“ The defendant says in this case, ‘ * * * he (plaintiff) knew as much about wood as Magee did. He could not have relied upon any statement, because he knew it was contrary to the facts, on his own story. He said that he saw it had knots; he said that he saw it had cracks; he said that he saw it was rotted. How could he have relied upon an assurance given by Magee ? Therefore, ’ says the defendant, ‘ he contributed to the accident by his own carelessness; ’ that no person in his right mind Avould have used that wood to make a scaffold and go ten feet above the ground if that were the fact.
“ Ordinarily, a person Avho Avould do those things might readily be said to be guilty of negligence. You cannot determine negligence or contributory negligence, hoAveArer, in a vacuum. *258 It is not something we can deal with in the abstract. It all depends upon the particular circumstances; upon the relationship of the parties; upon the particular time and place and conditions.
“ So you see, what you do, and whether that is negligence depends upon all of the factors involved, the background and everything else.
“ The plaintiff says that while it is true that ordinarily this would be negligence contributing to the occurrence, he says he was a workman; he had a job. He depended upon this for his livelihood. He says, if he refused to do this and did not rely upon the assurance and said to Magee-: ‘ I am not going to use this; get me some other lumber ’ or started to walk a block-and-a-half away for other two by fours, he might find himself out of a job. He says that under the circumstances it was not unreasonable for him to do what he did. Was it reasonable; was it unreasonable? If it was negligence, if the ordinary reasonably prudent man similarly situated would not have done what the plaintiff, Luneau, did, then he may not recover. ’ ’
Defendant in effect urges that the issue of - contributory negligence should not have been thus submitted to the jury as a question of fact but should have been and should now be resolved by the court as a matter of law. The court concludes, however, that the submission of the issue to the jury as a fact question was proper. “ The question of contributory negligence ordinarily is a question of fact. It is only when there is no dispute upon the facts and only one conclusion that can be drawn therefrom that it may be decided as a matter of law.” (Nelson v. Nygren, 259 N. Y. 71, 76.)
While it is true, as a general rule, that a plaintiff who has equal knowledge with a defendant of a defective condition, and fails to avoid being injured by or through it, is guilty of contributory negligence as a matter of law (Burnstein v. Haas, 272 App. Div. 1051, affd. 298 N. Y. 596), it is but a general and not an inflexible rule for “ One placed in the dilemma of abandoning the reasonable course of his work or assuming a risk will not be charged with contributory negligence as a matter of law if he adopts the latter alternative.” (Kaplan v. 48th Ave. Corp., 267 App Div. 272, 274; see, also, Beyette v. Greenblatt, 284 App. Div. 826; cf. Koenig v. Patrick Constr. Corp., 298 N. Y. 313, 318; Boerio v. Haiss Motor Trucking Co., 7 A D 2d 228.)
Here, Magee was not plaintiff’s legal employer. In actual practice, however, he assumed direct control and insisted that plaintiff use the defective lumber, assuring him of its safety for *259 use as posts. Plaintiff naturally looked upon Magee as one in a superior position and thus might quite reasonably rely on his assurances. (Broderick v. Cauldwell-Wingate Co., 301 N. Y. 182, supra; cf. Boerio v. Haiss Motor Trucking Co., 7 A D 2d 228, supra.) Magee’s assurance that the “ others ” used the lumber “ bears the implication that * * * he did not believe that he would be injured.” (Kaplan v. 48th Ave. Corp., supra, p. 274.) Plaintiff was not guilty of contributory negligence as a matter of law in relying’ upon that implication.
The instant case differs from Glass v. Gens-Jarboe, Inc. (280 App. Div. 378, affd. 306 N. Y. 786) because there the “ plaintiff was not handed the plank and told to use it. He was simply allowed to take and use a plank of his own choosing ” (p. 380).
The court is satisfied that the issues of fact were properly submitted to the jury. Therefore, defendant’s motions to dismiss the complaint for insufficiency of proof and for a direction of a verdict in its favor are all denied with appropriate exceptions.
Unfortunately the foregoing does not dispose of this matter. The doctor for the plaintiff refused to state that the injury was a permanent one — the furthest he would go, and this through the medium of a leading question by the court itself, was that the plaintiff would have a propensity toward a recurrence of his back injury. Under such circumstances, and considering the moderate amount of the special damages, the verdict is grossly excessive.
Prior to this decision, and in an effort to adjust this matter amicably, the court arranged a conference with counsel in which the court’s feelings on the question of the excessiveness of the verdict were made clear.
After a number of conferences, the defendant agreed that the figure of $25,000 suggested by the court was fair and would be paid by it if the court concluded that the verdict was otherwise unassailable. The plaintiff did not too strenuously dissent from the court’s evaluation of the injuries but took the position that he could not consent to a reduction in the verdict because it might imperil his rights to proceed against his compensation carrier for a possible deficiency (Workmen’s Compensation Law, § 29, subd. 5; Matter of Roth v. Harlem Funeral Car Co., 243 App. Div. 459, affd. 268 N. Y. 661).
I am informed that the compensation carrier has refused to give its consent to the plaintiff’s consenting to accept a reduction in the verdict if one were ordered. Such an intransigent attitude by compensation carriers (the State Insurance Fund excluded) is not unusual. It has necessitated many trials where *260 there could have been settlements redounding to the benefit of all concerned including the compensation carrier. A change of the law in this regard may well be overdue.
I feel that in the present posture of this case, a consent by the plaintiff to the acceptance of a reduction in the amount of the verdict to avoid the necessity of a new trial would not place him in peril vis-a-vis his compensation carrier (Matter of Gallagher v. Carol Constr. Co., 272 N. Y. 127).
In that case the alleged compromise was the filing of a stipulation by plaintiff agreeing to accept the verdict in the sum to which it had been reduced by the .trial court as an alternative to an order setting the verdict aside as excessive. His right to a deficiency was upheld against the compensation carrier, the court saying (p. 129): “ We think the compromise provision of section 29 of the Workmen’s Compensation Law was not intended to apply to the procedure here in question. Plaintiff’s stipulation consenting to take that portion of the verdict judicially determined as being not excessive, does not fall within any recognized meaning of the word ‘compromise.’ ”
However, to avoid any possible harm to plaintiff the court has concluded to reduce the verdict to the sum of $25,000 unconditionally and without any request for a stipulation by the plaintiff consenting thereto.
Thirty days’ stay of execution. Submit order.