**Joseph John BACH, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 7685.**

United States District Court
N. D. New York.

July 12, 1961.

Willard A. Healy, New Hartford, N. Y., and Bartle Gorman, Utica, N. Y., for plaintiff.

Justin J. Mahoney, U. S. Atty., Syracuse, N. Y., Edward J. McLaughlin, Asst. U. S. Atty., Syracuse, N. Y., of counsel, for defendant.

BRENNAN, Chief Judge.

This is an action brought under the provisions of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to recover money damages on account of personal injuries sustained by the plaintiff allegedly caused solely by defendant's negligence.

About 1:30 in the afternoon on January 19, 1959, the plaintiff, while returning from the guardhouse or station to his parked truck on the easterly side of the highway within the limits of the Griffiss Air Force Base at Rome, N. Y., slipped and fell, sustaining a fracture of his left leg. It is the plaintiff's principal contention that the above occurrence was caused through the negligence of the defendant in its failure to take protective measures for the benefit of the plaintiff in the matter of the maintenance of the highway which was covered with compacted snow or ice.

It became apparent in the course of the trial that the questions of actionable negligence on the part of the defendant and plaintiff's freedom from contributory negligence were seriously disputed. It was determined that the question of lia-

bility would first be decided by the court before medical testimony, as to the extent of plaintiff's injuries, was received. Since it is found that plaintiff has not established liability on the part of the defendant, it seems proper to make and enter a formal decision at this time.

The physical conditions and the manner in which the accident happened are substantially undisputed and are set out below as the bases for the application of the pertinent legal principles and the conclusions to be drawn therefrom.

Griffiss Air Force Base is a large military installation, located near the City of Rome, N. Y. and actively operated under the direction of military authorities. It covers a large land area and contains various installations including an airfield and large warehouse or depot facilities. In addition to military personnel, a large number of civilian employees and visitors enter upon the installation each day. There are two principal entrances and exits to the installation which are referred to as Gate 1 and Gate 2. We are concerned here with the area near Gate 2, through which some 5,000 or 6,000 people daily enter or leave the premises.

Route 49 is an improved public highway, running generally in an easterly and westerly direction and connecting the Cities of Utica and Rome. Gate 2 is adjacent to a portion of the Base. It provides the entrance from Route 49 to the installation itself. Entrance is effected over a private road at Gate 2 which proceeds in a northerly direction into the installation. This private road inclines rather sharply in a northerly direction at the gate entrance and is rather wide at that point so as to permit the entrance and exit of vehicular traffic at the same time. Proceeding in a northerly direction, the grade of the private road flattens out although it persists to some extent in a northerly direction to and beyond the place of the accident. A short distance from the actual entrance, there is located a guardhouse or inspection point. This guardhouse consists of a structure placed substantially in the middle of the passageway and affords a place where pedestrians and vehicles may be halted upon their entry or leaving the installation, guards being stationed therein for the purpose of inspection. The roadway on either side of the guardhouse is about 20 feet wide and vehicles passing into the installation proceed over the east side of the roadway and guardhouse while those leaving the installation pass to the west. The guardhouse at the time of the accident was so constructed that an overhang or canopy projected over part of the road, intended for the passage of vehicles. It was of such a height that passenger vehicles could pass under it on the east side and close to the guardhouse where such vehicles could be inspected without the necessity of the occupants leaving the vehicle or of the guards leaving the platform upon which the guardhouse was erected. Automobile trucks on account of their height, upon their entry to the installation, were required to pass easterly of the overhanging canopy and at a point about 20 feet east of the guardhouse itself. This requirement ordinarily necessitated the operator of a truck to bring his vehicle to a stop and proceed to the guardhouse to obtain the necessary entry card. This arrangement permitted the free flow of passenger vehicles entering the Base during the period required for the inspection of a truck. Employees of the Base ordinarily were provided with stickers which were placed upon their vehicles and they were passed into the installation by a wave of the guard's hand when he recognized the sticker upon the approaching automobile.

Plaintiff, a mature man of about 47 years of age and a laborer by occupation, was employed by a trucking company at Utica. He was physically handicapped by the loss of his left hand for which an artificial hand was substituted. This condition, however, had no bearing upon the accident itself. Plaintiff, operating a truck, had proceeded from Utica to Rome, making several stops to discharge or receive freight. He observed that the area was slippery in spots. After leaving Rome, he proceeded east over Route 49 to Gate 2 of Griffiss Air Force Base and

proceeded to enter the Base in order to deliver or receive articles of freight therein. He was entirely familiar with the area and with the rules relative to entry therein. Accordingly, he proceeded from Gate 2 over the private road within the Base and brought his truck to a stop opposite the guardhouse on the east and about 20 feet therefrom. He observed that the roadway was icy and that it was covered with "solid ice" in the area between the standing truck and the guardhouse. Upon alighting from his truck, plaintiff proceeded therefrom across the 20-foot area to the guardhouse in order to obtain the card authorizing him to proceed farther into the Base. The area was traversed by plaintiff, who wore heavy grooved soled rubbers, by adopting a sliding or shuffling technique. It is best described as moving his feet over the area without raising them from the ground. He reached the guardhouse without incident, obtained the necessary card from the guard stationed therein and started to return to his standing vehicle. Upon the return journey, he used the same technique. · Plaintiff had proceeded from 5 to 10 feet eastward from the guardhouse platform when he slipped and fell causing the injury referred to above. The roadway was unobstructed and smooth at the place of the accident. The slippery or icy condition, which was prevalent in the area, was the sole cause of the accident. He observed no sand, gravel or salt upon the surface of the area involved.

The pertinent weather conditions which were recorded by military personnel stationed at the Base disclosed that on Thursday, January 15, it had rained and the temperature was slightly above the freezing point. This resulted in a slippery, icy condition throughout the whole area which apparently continued until after the accident. The evidence shows that from January 15, 1959 to the time of the accident the temperature did not rise above the freezing point. A light snow fell between approximately 11 A.M. and 3:41 P.M. on the day of the accident. The total snowfall during that period was .6 of an inch and it is apparent that the greater portion thereof fell after the accident had occurred.

Due to the upgrade from Route 49 through Gate 2, the area was habitually plowed and sanded with a mixture of sand and salt. This operation ordinarily took place at about 6:30 A.M. No witness was called who testified as to the actual operation on the day of the accident but at 10 A.M. it was observed that the area at the gate had been recently plowed and sanded. The area, thus treated, is not definitely described by the testimony. Whether or not it extended as far north as the guardhouse itself appears to be a matter of conjecture. Airman Chaponis, when he reported for duty at 7:30 or 8 o'clock, observed traces of sand and salt in the vicinity of the guardhouse. Sometime after the accident happened, a similar observation was made by a foreman. The condition, thus described, may well have been the result of vehicles entering the Gate 2 over the sanded area and passing northward to and beyond the guardhouse into the Base proper. In any event, the weight of the evidence is to the effect that the condition at the place of the accident was icy and slippery at the time.

In the complaint, the plaintiff alleges that defendant's negligence consisted of (1) causing and permitting the area involved to become and remain covered with ice and slippery, (2) in failing to warn the plaintiff as to the above condition, (3) in failing to remedy said condition, (4) in failing to assist plaintiff in crossing the area and (5) in failing to provide a safe or alternative method or route.

In plaintiff's submitted brief, he appears to rely solely upon the contention that the defendant was negligent in failing to remedy the existing condition as a basis for a finding of liability. The other allegations of negligence, referred to above, appear to have been abandoned or, in any event, fail to find substantial support in the evidence. The slippery condition complained of existed throughout the area and was not caused through

the action of the plaintiff or made more dangerous by any affirmative act upon his part. No liability may be based upon a failure to warn because the evidence is emphatic proof plaintiff knew of the condition as the result of his own observation. Assistance in crossing the area was in no way requested by the plaintiff nor was there any indication that same was sought or would be received if offered. There is no evidence as to the existence of a safer alternative route since plaintiff himself testified that there was no way that he could cross from the guardhouse to his truck without going over the icy highway. Liability, if it exists, must then be found because of the defendant's failure to remove the condition that existed or to nullify the danger existing therein by the use of sand, salt or some other ice destroying agency. We turn then to legal precedents which define the obligation of the owner of land under the circumstances disclosed.

■■ The obligation of the owner of a private way to one lawfully using it is the same as that owed to one using a public highway. Dack v. Trustees of Peekskill Military Academy, 247 App. Div. 797, 286 N.Y.S. 48. It has long been recognized that a slippery condition, created by the elements, by the fall of snow or formation of ice, undisturbed by the act of the property owner, imposes no liability upon him for injuries sustained by a pedestrian crossing the area. "Such passivity is not actionable wrongdoing". Eldred v. Keenan, 164 App.Div. 63, 149 N.Y.S. 376, and cases cited. Stated in other words, liability may not be predicated upon the existence of snow and ice upon a highway where the condition, created by the elements, remains undisturbed. Nelson v. Schultz, 170 Misc. 681, 11 N.Y.S.2d 184; Olm v. State of New York, 207 Misc. 610, 139 N.Y.S.2d 701. No liability is imposed upon the owner where the conditions are no more hazardous than those generally prevailing in the area. Schwabl v. St. Augustine's Church, 288 N.Y. 554, 42 N.E.2d 16. It follows from the above that the plaintiff may not recover here because

of the existence of the slippery condition at the place of the accident. There remains only to determine whether or not liability may be imposed because of the failure of the defendant to alleviate the condition.

■ The argument is presented that the use of sand, salt, cinders or like material at the place of the accident might have avoided same. No case is cited however which imposes such an obligation upon the owner under the circumstances existing here. The decisions above cited are based upon the premise that no effort was made "to arrest the accumulation, or to remove the obstruction". Eldred v. Keenan, supra. The failure to eliminate snow and ice as a hazard to pedestrians in this climate has not been held in itself to create liability. To do so would impose liability upon every private property owner in the matter of injuries sustained by those lawfully passing over roadways located thereon. No precedent is found for such a holding and this court is unwilling to create one. An affirmative act creating the condition such as was created by the application of salt in the decision in the case of Hendley v. Daw Drug Co. Inc., 293 N.Y. 790, 59 N.E. 2d 31, or a defect in the area to be travelled seems to be the ordinary requirement. A discussion of the many reported snow and ice cases would seem unnecessary. An affirmative wrongful act such as would create or increase the hazard is ordinarily the required basis of the owner's liability. Greenberg v. F. W. Woolworth Co., 18 Misc.2d 141, 186 N.Y.S.2d 303; Golub v. City of N. Y., 201 Misc. 866, at page 867, 112 N.Y.S.2d 161. No such act on the part of the defendant is established here and no liability follows.

Although the defendant earnestly urges that the plaintiff may not recover since he has not shown his freedom from contributory negligence either as a matter of law or as a matter of fact, the decision may better rest upon the above finding that no actionable negligence on the part of the defendant has been established.

604

It is the general rule that a plaintiff who has equal knowledge with a defendant of a defective or dangerous condition and fails to avoid being injured by it is guilty of contributory negligence as a matter of law. This rule does not always apply to the workman who must assume the risk or endanger his employment by refusing so to do. Luneau v. Elmwood Gardens, 22 Misc.2d 255, at page 258, 198 N.Y.S.2d 932. Plaintiff's contributory negligence here would then become a question of fact, the decision of which is unnecessary because of the lack of the establishment of actionable negligence on the part of the defendant.

The above will constitute the court's findings of fact and conclusions of law in accordance with Rule 52 F.R.Civ.P., 28 U.S.C.A. and the ultimate finding is made that the plaintiff has failed to establish actionable negligence on the part of the defendant and the conclusion follows that the complaint must be dismissed. Judgment is directed accordingly.

So ordered.