**6**

Janet Sue JONES, by her next friend,
Edith Meade, and Donald R. Jones,
her husband, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 2408.

United States District Court
D. Delaware.

Nov. 8, 1965.

Albert L. Simon, Wilmington, Del., for plaintiffs.

Alexander Greenfeld, U. S. Atty., and Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for defendant.

LAYTON, District Judge.

This is an action in negligence filed by Janet Sue Jones, by her next friend, Edith Meade, and Donald R. Jones, her husband, against the United States of America under the Federal Tort Claims Act.

The plaintiffs had previously filed suit in the Superior Court of the State of Delaware against Beneficial Building Corporation. After a compromise and settlement, a Release in special form was executed by the plaintiffs discharging the Beneficial Building Corporation from liability.

The complaint in this case alleges in substance that as a result of the negligent failure of the Post Office Department to use reasonable care in the exercise of their responsibilities, the plaintiff, Janet Sue Jones, injured her right eye on a portion of a mail receptacle which obstructed the common entrance hallway in the apartment house where she resided.

The defendant filed a motion for summary judgment.

At approximately 9:30 P.M., on November 27, 1960, the plaintiff, Janet Sue Jones (now Janet Sue Biddle), while entering the apartment house located at 2 East 14th Street, Wilmington, Delaware, where she resided, struck her right eye on the corner of the master door of the apartment house mail receptacle. At the time of the accident, the master door of the mailbox was in the open position, and the entrance hallway was unlighted.

The mail receptacle is a multiple unit recessed in the wall of the common entrance hallway. It is located on the right side of the hallway 2 feet 7⅛ inches from the entrance doorway (Hallway Plan). The master section, when in the open position, lies parallel to the floor at a height of 5 feet, 2¼ inches therefrom (Hallway Plan). In the open position, it extends into the hallway approximately 7 inches. At the time of the injury, the master section of the mail receptacles contained a hole where a master lock should have been. There was no master lock in the mailbox assembly at the time of the occurrence. Anyone could open the master section by inserting a finger in the hole and pulling downward. When the master portion was pulled open, it remained in the open position without closing automatically. In addition, unless the master door were pushed all the way into the closed position, it would not stay closed. Occasionally, it was impossible to close the lid tightly because of a loose hinge. At times, the master door would drop down in the open position even though the door was pushed tightly closed.

Sometime prior to November 27, 1960, the mail carrier serving the apartment house submitted a written report to his supervisor that a master lock had not been installed in the mail receptacle. No action was taken to install a master lock until after the accident.

Under the rules and regulations promulgated by the Post Office Department, master locks furnished by the Postal authorities are to be installed under the supervision of Postal employees in all apartment house mail receptacles. The key to the master lock remains in the custody of Post Office employees. The Postmasters are charged with the responsibility to inform builders and owners of the requirements. They are also promptly to investigate lack of repairs or irregularities in the operations of the apartment house mail receptacles. The carriers are required to report mailboxes that do not have master locks or are out of repair.

On the evening in question, Mr. Jones opened the front door of the apartment house, which was the only entrance door to plaintiffs' apartment, and was holding it open for Mrs. Jones as she stepped into the hallway in front of him. She took one step into the hallway before striking the mailbox. She was not aware that the hallway was unlighted until she had made the one step. Earlier on the same day when Mr. and Mrs. Jones left the apartment house, the master section of the mailbox was closed.

Plaintiffs' first contention, although only superficially treated on the brief, is that the regulations of the United States Post Office Department pertaining to apartment house mail receptacles were promulgated for the safety of the public, that the defendant, United States, violated one or more of these regulations, as a result whereof, plaintiff was injured. From this, plaintiff seems to argue that the breach by defendant of any one of these regulations, resulting in injury to another, is analogous to the breach of a statute with the result that defendant would be guilty of negligence per se. Campbell v. Walker, 2 Boyce 41, 78 A. 601, 604.

Conceding that the Post Office Department, as any other agency of the government, is under a duty to operate its business with due regard for the safety of others, Worth v. United States, 158 F.Supp. 550, the regulations here under consideration clearly were promulgated for purposes other than safety to the public. Even a casual reading of

these regulations (155.611–.646) demonstrates that their purpose is twofold: (1) to facilitate the delivery of the mail and (2) to insure the safety of the mail. Thus, Reg. .611 seems to cover both facility of delivery and safety; Reg. .612 actually uses the phrase "to assure more adequate protection of the mail of occupants"; Reg. .613 provides for the safe and durable construction of mail receptacles; Reg. .621 uses the words "reasonable safety to the mail deposited"; Reg. .622 uses the phrase "removed with facility" in conjunction with bulky mail such as magazines; Reg. .623 is obviously directed at the safety of the mails as is Reg. .624; Reg. .626 has to do with facility of delivery; Reg. .627 has to do with facility and safety and sub-section (c) actually employs the phrase "to afford the best protection to the mail and enable the carriers to read the addresses * * * without undue strain on their eyes"; Reg. .628(b) is obviously a safety regulation, while Regs. .631, .632 and .633 are for the purpose of facility of delivery; and finally, Regs. .641, .642, .643, .644 are clearly safety regulations, the last-cited regulation containing the phrase "for safety reasons."

■ It is my conclusion on this point that plaintiff cannot base a cause of action for personal injury against the United States growing out of a breach by the defendant of any of the regulations just quoted because they were designed for a purpose other than safety to the public. Kernan v. American Dredging Co., 355 U.S. 426, 442, 78 S.Ct. 394, 2 L.Ed.2d 382; Restatement on Torts Sec. 286.

There remains then, plaintiffs' common-law charge of negligence that defendant knew or should have known that in the absence of a master lock, the mailbox represented a potential hazard to users of the hallway because tenants pulling down the top part of the receptacle might forget to close it and, thus, with the receptacle's master door protruding from the wall out into the dimly lighted hallway, a person might strike his head against it when entering the door.

■ The defendant through its agents, the mail carrier and his superior, Roberts, were charged with knowledge that the regulations required a master lock, that none existed, that tenants could pull the top part of the receptacle down and that the hallway was dimly lighted. There is other evidence that the bulb in the hallway occasionally burned out. There is evidence also that the top of the receptacle was frequently down and, unless pressed shut, might drop down as the result of jarring, such as caused by a passing truck. The inference is that this was a frequent occurrence. On the other hand, there is no evidence that the mail carrier had ever seen the lid down, or had been warned that it frequently fell down or was on notice that other accidents had happened under analogous circumstances. Adopting the standard of care here applicable, were the mail carrier and his superior, Roberts, as reasonable men, to foresee from the fact that the lock was missing and the upper part of the receptacle capable of being pulled down by a finger, that some careless person might leave it down and, further, that a person might enter the hall and strike his head on it at a time when the light bulb had burned out? This is carrying the doctrine of foreseeability to questionable lengths. 2 Harper & James, The Law of Torts, p. 1018, Sec. 18.2.

Moreover, plaintiff, in charging defendant with negligence in failing to foresee the danger to persons using the hallway if the upper part of the receptacle were left down, places herself on the horns of a dilemma. She used the hallway daily. She used this same receptacle three or four times a week. She knew the hall was dimly lighted and at times very dark. She had seen the upper part of this receptacle down on more than one occasion when using the hall and always pushed it back up. She never complained either to the landlord or this defendant that the hall was badly lighted or that there might be danger to tenants using the hallway if the top part of the receptacle were left down. Thus, if the defend-

ant is chargeable with foreseeing this danger then, under the doctrine of contributory negligence, why was the potentially dangerous nature of this receptacle when down not foreseeable to her?

Some authorities would so hold. Bach v. United States, 197 F.Supp. 600, 604 (D.C.N.D.N.Y.). Others take the view that, depending upon the circumstances, to forget a known danger is not necessarily contributory negligence. Gibson v. Mendocino County, 16 Cal.2d 80, 105 P.2d 105; Schance v. H. O. Adams Tile Co., 131 Cal.App.2d 549, 280 P.2d 851.

Under facts such as these reasonable minds may differ and caution is dictated. As the Fifth Circuit Court of Appeals said in National Screen Service Corp. v. Poster Exchange, Inc., 305 F.2d 647:

"The moving party has the burden of positively and clearly demonstrating that there is no genuine issue of fact and any doubt as to the existence of such an issue is resolved against him. Heyward v. Public Housing Administration et al., 5 Cir., 238 F.2d 689. A long line of cases have held that summary judgment should not be granted if there is the 'slightest doubt' as to the facts; which is actually another way of stating that there is no genuine issue as to any material fact. The fact that it may be surmised that the party against whom the motion is made is unlikely to prevail at the trial is not sufficient to authorize summary judgment against him. Bruce Construction Corp. et al. v. U. S., 5 Cir., 242 F.2d 873; Barron & Holtzoff, Vol. 3 § 1234, p. 124 and 132. The burden is heavy on the moving party to establish clearly his right to summary judgment. See Moore's Federal Practice, 2d Ed. ¶ 56.11[3] ¶ 56.15[3]. Even in cases where the movant has technically discharged his burden, the trial court in the exercise of a sound discretion may decline to grant sum-

mary judgment. Moore's Federal Practice, 2d Ed. ¶ 56.23, p. 2340." Compare Krieger v. Ownership Corporation, 270 F.2d 265 (3d Cir.).

Weighing the facts here against the cautionary language just quoted inclines me to the view that the defendant's motion for summary judgment should be denied.[1]

---

1. At trial, however, plaintiff will not be permitted to assert a cause of action for negligence based on a breach of the postal regulations.